UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00122-JAW-2 |
| | ) | 2:21-cr-00163-JAW-1 |
| BERNARD GADSON | ) | |

**OMNIBUS ORDER ON DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE AND DISCOVERY**

An incarcerated defendant brings two motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), one motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), and a request that the court order discovery to support his claims. The court dismisses both compassionate release motions, concluding the defendant has not established in his particular case that his medical conditions, allegations of sexual abuse, or allegations of physical abuse amount to an extraordinary and compelling reason for sentence reduction and that the 18 U.S.C. § 3553(a) factors counsel against his early release. The court also denies the defendant's motion for sentence reduction because the amendment he identifies does not apply retroactively and, in addition, is inapplicable to the defendant's case. Finally, the court dismisses the defendant's motion for post-conviction discovery to aid his sentence reduction motions, in line with well-established precedent from the United States Supreme Court and the Court of Appeals for the First Circuit.

I.    **BACKGROUND**

A.    **Procedural History**

1.        *United States v. Gadson*, No. 2:19-cr-00122-JAW-2[1]

On June 20, 2019, a federal grand jury indicted Bernard Gadson on charges of attempted bank fraud, aiding and abetting aggravated identity theft, and conspiracy to commit bank fraud and aggravated identity theft. *Indictment* (ECF No. 3). The indictment was superseded by a revised indictment on October 24, 2019, adding a count of bank fraud and an additional count of aiding and abetting aggravated identity theft. *Superseding Indictment* (ECF No. 64). On October 25, 2021, Mr. Gadson pleaded guilty to attempted bank fraud (Count III) and one count of aiding and abetting aggravated identity theft (Count IV). *Min. Entry* (ECF No. 192).

2.        *United States v. Gadson*, No. 2:21-cr-00163-JAW-1[2]

Meanwhile, while Mr. Gadson was on pretrial release in Docket No. 2:19-cr-00122-JAW-2, he violated a condition of release by traveling outside the District of Massachusetts on multiple occasions without the knowledge or permission of his supervising Pretrial Services Officer. *Info.* at 1-2 (ECF No. 35). Mr. Gadson was charged with one count of criminal contempt (Count I) on October 20, 2021 and waived his right to proceed by indictment on October 25, 2021. *Id.*; *Oral Waiver of*

---

[1]        Unless otherwise noted, all docket entries referenced in this subsection are from No. 2:19-cr-00122-JAW-2. Regarding No. 2:19-cr-00122-JAW-2, United States District Judge D. Brock Hornby presided over Mr. Gadson's case from June 20, 2019 until 2021 when he retired. United States District Judge Jon D. Levy presided over Mr. Gadson's case from 2021, and imposed sentence on May 26, 2022. Upon Judge Levy's retirement in 2024, Mr. Gadson's case was randomly assigned to this judge. For the sake of simplicity, the Court refers to all docket entries from this case by its present designation: No. 2:19-cr-00122-JAW-2.

[2]        Unless otherwise noted, all docket entries referenced in this subsection are from No. 2:21-cr-00163-JAW-1. United States District Judge Jon Levy presided over Mr. Gadson's sentence in No. 2:21-cr-00163; however, for simplicity, the Court refers to all docket entries from this case by its present designation: No. 2:21-cr-00163-JAW-1.

*Indictment* (ECF No. 42).   He pleaded guilty to the charge in the information on October 25, 2021.  *Min. Entry* (ECF No. 43).

### 3.    The May 26, 2022 Dual Sentencing

On May 26, 2022, Judge Jon D. Levy sentenced Mr. Gadson in both cases to a term of incarceration of eighty months on Count III of Docket No. 2:19-cr-00122-JAW-2 and Count I of Docket No. 2:21-cr-00163-JAW-1, to be served concurrently, and a consecutive term of six months pursuant to 18 U.S.C. § 3147.  *Min. Entry*, No. 2:19-cr-00122-JAW-2 (ECF No. 219); No. 2:21-cr-00163-JAW-1 (ECF No. 69).  Judge Levy also sentenced Mr. Gadson to twenty-four months of imprisonment on Count IV of Docket No. 2:19-cr-00122-JAW-2, to be served consecutively to the sentences just mentioned.  *Id.*  This amounted to a total term of incarceration of 110 months.  *Id.*

Mr. Gadson's sentence included four years of supervised release on Count III of Docket No. 2:19-cr-00122-JAW-2 and Count I of Docket No. 2:21-cr-00163-JAW-1, and one year of supervised release on Count IV of Docket No. 2:19-cr-00122-JAW-2, all to be served concurrently.  *Am. J.* at 3, No. 2:19-cr-00122-JAW-2 (ECF No. 223); 2:21-cr-00163-JAW-1 (ECF No. 73).  Judge Levy also ordered $256,537 in restitution and $300 in cumulative special assessments.  *Id.* at 6.

Mr. Gadson appealed his restitution order to the United States Court of Appeals for the First Circuit.  On August 9, 2023, the First Circuit affirmed Mr. Gadson's prison sentence, but vacated a part of Judge Levy's restitution order, affirmed the remainder of the order, and remanded the case to Judge Levy.  *United States v. Gadson*, 77 F.4th 16, 23 (1st Cir. 2023).  After the First Circuit issued its

mandate and returned jurisdiction to this Court, on September 7, 2023, Judge Levy amended Mr. Gadson's restitution order, reducing it to $149,100. *Op. of USCA*, No. 2:19-cr-00122-JAW-2 (ECF No. 238); 2:21-cr-00163-JAW-1 (ECF No. 90); *Mandate of USCA*, No. 2:19-cr-00122-JAW-2 (ECF No. 240); 2:21-cr-00163-JAW-1 (ECF No. 92); *Second Am. J.* at 6, No. 2:19-cr-00122-JAW-2 (ECF No. 243); 2:21-cr-00163-JAW-1 (ECF No. 95).

### B.    Bernard Gadson's Pending Motions

### 1.    The Defendant's First Compassionate Release Motion

On January 23, 2024, Mr. Gadson filed a first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing he is entitled to early release or sentence reduction due to health issues caused by "unsanitary" housing conditions at FCI Ray Brook and because he was the victim of alleged sexual abuse. *Def.'s Mot. for Compassionate Release Pursuant to 18 U.S.C. §[ ]3582(c)(1)(A)* at 3-8, No. 2:19-cr-00122-JAW-2 (ECF No. 248); 2:21-cr-00163-JAW-1 (ECF No. 98) (*Def.'s First Compassionate Release Mot.*). On March 4, 2024, Mr. Gadson filed an addendum to his compassionate release motion, alleging that he had been physically assaulted by a corrections officer at FCI Oxford and subsequently "subjected to more abuse" by members of the facility's medical staff. *Addendum* at 2-4, No. 2:19-cr-00122-JAW-2 (ECF No. 253); 2:21-cr-00163-JAW-1 (ECF No. 103) (*Def.'s First Compassionate Release Addendum*). The Government opposed Mr. Gadson's requested sentence reduction on April 19, 2024. *Gov't's Resp. in Opp'n to Mots. for Compassionate Release*, No. 2:19-cr-00122-JAW-2 (ECF No. 263); 2:21-cr-00163-JAW-1 (ECF No.

113) (*Gov't's Opp'n to Def.'s First Compassionate Release Mot.*).  Mr. Gadson replied and included various attachments in support of his motion on June 3, 2024.  *"Verified Reply [B]r." of the Pet'r/Def. Bernard Gadson*, No. 2:19-cr-00122-JAW-2 (ECF No. 266); 2:21-cr-00163-JAW-1 (ECF No. 118) (*Def.'s First and Second Compassionate Release Reply*).

### 2. The Defendant's Second Compassionate Release Motion

On March 15, 2024, Mr. Gadson filed a second motion for sentence reduction, arguing his entitlement to acceptance of responsibility credit pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 3E1.1.  *Def.'s Mot. for Reduction in Sentence Pursuant to 18 U.S.C. §[ ]3582(c)(2)*, No. 2:19-cr-00122-JAW-2 (ECF No. 256); 2:21-cr-00163-JAW-1 (ECF No. 106) (*Def.'s Second Compassionate Release Mot.*).  The Government opposed the motion on April 30, 2024.  *Gov't's Resp. in Opp'n to Mot. for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(2)*, No. 2:19-cr-00122-JAW-2 (ECF No. 264); 2:21-cr-00163-JAW-1 (ECF No. 113) (*Gov't's Second Compassionate Release Opp'n*).  Mr. Gadson replied to the Government's opposition on June 3, 2024.  *Def.'s First and Second Compassionate Release Reply*.

### 3. The Defendant's Third Compassionate Release Motion

On August 28, 2024, the Defendant wrote a letter to the Court, clarifying "[t]his is not another request for compassionate release[;] this is an update on my well[]being," and describing multiple allegations of misconduct and abuse on the part of Bureau of Prisons (BOP) officials and medical staff, a suicide attempt, solitary confinement, and medical issues including a lower back injury.  *Letter to Ct.* at 1, No.

2:19-cr-00122-JAW-2 (ECF No. 268); 2:21-cr-00163-JAW-1 (ECF No. 120) (*Def.'s Third Compassionate Release Mot.*); *see also Additional Attachs.*, No. 2:19-cr-00122-JAW-2 (ECF No. 267); 2:21-cr-00163-JAW-1 (ECF No. 119). The Court construed this letter as a compassionate release motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A), and, on August 30, 2024, ordered the Government to respond to these claims "since some of Mr. Gadson's allegations may be proper considerations under U.S.S.G. section 1B1.13(b)." *Order* at 1, No. 2:19-cr-00122-JAW-2 (ECF No. 269); 2:21-cr-00163-JAW-1 (ECF No. 121). On October 4, 2024, the Government responded to Mr. Gadson's letter, including over thirty attachments of clinical records, communications, and BOP reports challenging the basis for Mr. Gadson's allegations. *Gov't's Resp. to the Def.'s Aug. 28, 2024 Letter to the Ct.*, No. 2:19-cr-00122-JAW-2 (ECF No. 274); 2:21-cr-00163-JAW-1 (ECF No. 126) (*Gov't's Third Compassionate Release Opp'n*). On January 13, 2025, Mr. Gadson replied to the Government's letter, appending over thirty attachments. *Bernard's Second Resp. to Gov't's Aug. 28th Letter to the Ct*, No. 2:19-cr-00122-JAW-2 (ECF No. 281); 2:21-cr-00163-JAW-1 (ECF No. 133) (*Def.'s Third Compassionate Release Reply*).[3]

---

[3]     On January 14, 2025, Mr. Gadson sent another letter to the Court, which the Clerk docketed as "ADDITIONAL ATTACHMENTS (empty envelope) as to BERNARD GADSON re: [ECF No.] 133 Bernard's Second Response to Government's August 28th Letter to the Court." *Additional Attachs.*, No. 2:19-cr-00122-JAW (ECF No. 282); 2:21-cr-00163-JAW-1 (ECF No. 134). As the Clerk's label indicates, this docket entry includes an envelope, from Mr. Gadson to the District of Maine, and a letter from the United States Postal Service apologizing for "the damage to your mail during handling by the Postal Service." *Id.* at 2.

### 4.     The Defendant's Post-Conviction Discovery Motion

On September 23, 2024, the Defendant filed another letter, which the Clerk docketed as an expedited discovery request, describing further instances of unsanitary housing conditions, racism, and violence and additionally asks the Court to "please review camera footage because if I acted in a way that was violent crazy not normal the videos would already be at the courts . . . it['s] easy [for BOP] to say on paper we acted by policy but will the video footage paint the same story." *Mot. for Disc., Mot. for Expedited Ruling* at 3, No. 2:19-cr-00122-JAW-2 (ECF No. 272); 2:21-cr-00163-JAW-1 (ECF No. 124) (*Def.'s Disc. Mot.*).  That same day, the Court issued an order dismissing Mr. Gadson's request for expedited ruling of his discovery motion, noting Mr. Gadson's letter "makes very serious allegations against the BOP, and the Government has said that it needs additional time to investigate those allegations." *Order*, No. 2:19-cr-00122-JAW-2 (ECF No. 273); 2:21-cr-00163-JAW-1 (ECF No. 125).

On October 8, 2024, Mr. Gadson submitted another letter in response to the Court's order addressing his discovery motion, in which he said he "would still like to keep the court[] fully aware of what is taking place," recounting additional purported episodes of sexual assault, violence, poisoning attempts, and other serious mistreatment by BOP officials, and "request[ing] again a discovery with all videos I am in[,] all p[s]yc[h]ology records of my sui[c]ide stay[,] and I now request a[n] oral argument and mental health evaluation at any of BOP medical facilit[ie]s to show the courts I am not crazy and these things have happened." *Letter in Resp. to Gadson's*

*Ruling for Expedited Ruling* at 3, No. 2:19-cr-00122-JAW-2 (ECF No. 275); 2:21-cr-00163-JAW-1 (ECF No. 127) (*Def.'s Disc. Addendum*).

### 5.  The Defendant's Status Updates on Pending Compassionate Release Motions

Mr. Gadson also mailed numerous "status updates" to the Court.  Mr. Gadson did not frame these letters as motions for sentence reduction, and they do not raise independent grounds for such relief.  The Court thus reviewed them as supplemental filings to the three previously pending motions requesting the Defendant's early release.

On October 21, 2024, Mr. Gadson filed a "status update on pending compassionate release [motions]," to the Court, in which he states that he "spent the past 98 days on stric[]t solitary lock down from 7/3/24 [to] 10/7/24 while at Oxford [and] [he] was non[-]stop harassed, beat[en], physically [and] mentally tortured[,] and retaliated against for reporting such abuse including non[-]stop sexual abuse and harassment," among other allegations.  *Status Update on Pending Compassionate Release* at 1, No. 2:19-cr-00122-JAW-2 (ECF No. 276); 2:21-cr-00163-JAW-1 (ECF No. 128) (*Def.'s 10/21/24 Letter*).  Mr. Gadson filed another letter on December 4, 2024, telling the Court that after he arrived at FCI Colorado on October 25, 2024, "within 48 hours [his] whole entire inmate contact list[,] visit list[,] and address list w[ere] purged[,] completely w[]iped," and reporting additional issues with his FSA credits, "mental warfare," and averring he was moved to FCI Colorado "as a scare tactic[,] as a threat[, and] as retaliation for [his] willingness to make a stand for [himself] and report the things that have happened to [him]."  *Update I Status in Compassionate*

*Release* at 1-2, No. 2:19-cr-00122-JAW-2 (ECF No. 279); 2:21-cr-00163-JAW-1 (ECF No. 129) (*Def.'s 12/4/24 Letter*).

This order addresses the Defendant's three pending motions for compassionate release as well as his request for discovery and subsequent letters in support of his early release. As the discovery motion implicates the record the Court may consider in ruling on sentence reduction, this order addresses the Defendant's request for post-conviction discovery first.

## II.    THE DEFENDANT'S MOTION FOR POST-CONVICTION DISCOVERY

### A.    The Parties' Positions

#### 1.    The Defendant's Discovery Motion

On September 23, 2024, Mr. Gadson filed a motion seeking discovery in support of his pending motions for compassionate release. *See Def.'s Disc. Mot.* He says:

> The BOP will lie about my behavior on paper but cameras never lie[;] please request all video footage hand held with audio and facility cameras from SHU unit B range on 7-5-24 between 8:00am and the time I was removed after hanging my[]self[,] videos from 7-6-24 medical suicide cell 10am to 11:30am[,] video from hallway same day[,] video 7-8-24 approx[imately] 9:30pm-11:00pm[,] videos from 7-26-24 [until] 7-27-24 11:00am [until] 11:50pm[,] and all records from staff and suicide watch compa[n]ions[.] [Y]ou will see my complicit behavior and my toucher.

*Id.* at 2. He further urges the Court to "not be blinded by BOP staff painting a picture like he is refusing treatment[,] he[']s crazy[,] he[']s trying to kill himself so we followed policy," and to "review camera footage because if I acted in a way that was violent[,] crazy[,] not normal[,] the videos would already be at the courts and I[']d be charged

no discovery request needed." *Id.* at 3; *see also Def.'s Disc. Addendum* at 3 ("I request again a discovery with all videos I am in all p[s]yc[h]ology records of my sui[c]ide stay").

### B.    Legal Standard

It is well-established law that there "is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (discussing *Brady v. Maryland*, 373 U.S. 83 (1963)); *accord Kaley v. United States*, 571 U.S. 320, 335 (2014) (quoting *Bursey*, 429 U.S. at 559-61). Further, "the Supreme Court has explicitly rejected *Brady*'s applicability to postconviction proceedings" because "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Tevlin v. Spencer*, 621 F.3d 59, 70 (1st Cir. 2010) (quoting *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009)). Similarly, Federal Rule of Criminal Procedure 16, which "govern[s] discovery" in criminal cases, *United States v. Hensel*, 699 F.2d 18, 39 (1st Cir. 1983), grants "only pretrial discovery," *United States v. Nobles*, 422 U.S. 225, 235 (1975), and "the continuing duties of parties to disclose under the Rule ends upon conviction," *Astacio-Espino*, 2017 U.S. Dist. LEXIS 229484, at *4  (citing Fed. R. Civ. P. 16(c)). "Thus, the Federal Rules of Criminal Procedure do not provide defendants with a right to post-conviction discovery." *Astacio-Espino,* 2017 U.S. Dist. LEXIS 229484, at *5.

In *Astacio-Espino*, the U.S. District Court for the District of Puerto Rico interpreted Supreme Court precedent to hold that "[i]f defendants have any right to

post-conviction discovery, it must stem from the due process integral to exercising the substantive rights that Rule 33(a) creates for 'a new trial if the interest of justice so requires.'" *Id.* (citing *Osborne*, 557 U.S. at 68 (recognizing that "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right") (in turn quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981)); *Osborne*, 557 U.S. at 72-74 (holding that defendants do not have a "freestanding right" to post-conviction discovery)).

### C.    Discussion

Mr. Gadson seeks discovery to support his motions for compassionate release. He does not have a pending motion for a new trial and, as such, does not and cannot seek discovery which "stem[s] from the due process integral to exercising the substantive rights that Rule 33(a) creates for 'a new trial if the interest of justice so requires.'" *Astacio-Espino*, 2017 U.S. Dist. LEXIS 229484, at *5. Instead, Mr. Gadson seeks discovery regarding his motions for sentence reduction, which raise factual allegations that purportedly took place after the Defendant's conviction.

Defendants do not have a "freestanding right" to discovery after their conviction. *Osborne*, 557 U.S. at 72-74. Mr. Gadson points to no caselaw showing he is entitled to discovery on a motion for compassionate release, and the Court is aware of none. *Accord United States v. Ballenger*, No. CR16-5535 BHS, 2021 U.S. Dist. LEXIS 17722, at 12 (W.D. Wash. Jan. 29, 2021) (concluding "[defendant] has not provided the Court any legal authority establishing a right to discovery on a motion for compassionate release"); *United States v. Morris*, No. 13-125, 2021 U.S. Dist.

LEXIS 162330, at *10 n.3 (W.D. Pa. Aug. 27, 2021) (same).  The Court accordingly denies his discovery request as procedurally improper.  *See id.*

### D.    Conclusion

The Court DISMISSES without prejudice the Defendant's Motion for Discovery, Motion for Expedited Ruling, No. 2:19-cr-00122-JAW-2 (ECF No. 272); 2:21-cr-00163-JAW-1 (ECF No. 124).

## III.    THE DEFENDANT'S FIRST MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

### A.    The Parties' Positions

#### 1.    The Defendant's Motion and Addendum[4]

On January 23, 2024, Mr. Gadson moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing he had satisfied his requirement of administrative exhaustion and seeking sentence reduction based on his medical circumstances (U.S.S.G. § 1B1.13(b)(1)) and his allegation that he is a victim of abuse (U.S.S.G. § 1B1.13(b)(4)(A)).  *Def.'s First Compassionate Release Mot.* at 2-6.  He also contends the 18 U.S.C. § 3553(a) factors weigh in favor of his early release.  *Id.* at 10.

On March 4, 2024, Mr. Gadson submitted an addendum to his motion, asserting an additional extraordinary and compelling ground for sentence reduction

---

[4]    On October 21, 2024, Mr. Gadson submitted a letter which he labeled "status update on pending compassionate release."  *Def.'s 10/21/24 Letter* at 1.  Setting aside the issue that Mr. Gadson did not seek permission, and was not granted permission, to file a sur-reply, the Court reviewed the letter, and determined it does not raise facts or arguments not already addressed in his first motion for compassionate release and addendum to that motion.  As such, the Court does not further address this letter in the order.

pursuant to U.S.S.G. § 1B1.13(b)(4)(B) based on a separate allegation of abuse. *Def.'s First Compassionate Release Addendum* at 2.

### a.    Administrative Exhaustion

Mr. Gadson asserts he administratively exhausted his request for sentence reduction by petitioning the Warden of FCI Oxford for early release more than thirty days before filing his motion in this Court. *Def.'s First Compassionate Release Mot.* at 2.

### b.    Extraordinary and Compelling Reasons

### i.    U.S.S.G. § 1B1.13(b)(1)

The Defendant first argues his medical circumstances justify early release pursuant to § 1B1.13(b)(1). He says that while housed at FCI Ray Brook, he was moved to SARNAC[5] on March 29, 2023 after "the CMC of the institution asked Defendant to perform fellatio on him [and] [Mr. Gadson] refused." *Id.* at 3. Mr. Gadson asserts that SARNAC "was entirely unsuitable for living in," because of "[f]eces flow[ing] freely between the cells, which were covered in black mold." *Id.* He claims that he "[i]mmediately . . . began to experience respiratory issues and despite multiple request to medical he was never diagnosed nor treated for this condition, which has steadily worsened since then." *Id.* He reports that on approximately June 26, 2023, SARNAC was closed for these sanitation issues and the Defendant was

---

[5]    Both the Government and the Defendant reference "SARNAC" multiple times in their filings, but they do not define for the Court what it is. Based on the context of the parties' submissions, the Court believes SARNAC is or was a unit at FCI Ray Brook, where the Defendant spent some time during his period of incarceration.

transferred to FCI Oxford in September of 2023 "without ever being seen or treated for his respiratory issues," and submits that this medical care "puts him at risk of serious deterioration of health." *Id.* at 3-4.

### ii.        U.S.S.G. § 1B1.13(b)(4)(A)

Mr. Gadson additionally requests compassionate release for abuse suffered pursuant to U.S.S.G. § 1B1.13(b)(4)(A), which states, in relevant part:

> (4) The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
> **(A)**   sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2446(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim")
>
>      . . . .
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody or control over the defendant . . ..

*Id.* at 4-6 (quoting U.S.S.G. § 1B1.13(b)(4)(A)).   He specifically avers that he experienced conduct within the definition of 18 U.S.C. § 2246(2) ("Contact between the mouth and penis") when, in January and July of 2023, "[t]he CMC at Ray[][B]rook on multiple occasions, asked Defendant to perform fellatio on him [and] [o]n each of these occasions, Defendant refused." *Id.* at 4-6.   He says this conduct falls under BOP Policy Statement 5324.12 which defines "sexual abuse" to include "(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse,[] or gratify sexual desire," and "(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in

the activities described in paragraphs (1) through (5)." *Id.* at 6 (quoting BOP, BOP Program Statement 5324.12).

Mr. Gadson additionally asserts that he "does not feel safe" and "[n]ot only has the institution where the sexual abuse happened done nothing, but the facility where he has been transferred is trying to pass the buck instead of doing the responsible thing and acting on his complaint. To Defendant, there is NO safe place for him in the BOP." *Id.* at 8-9 (emphasis in original).

### iii.    U.S.S.G. § 1B1.13(b)(4)(B)

In a subsequently filed addendum, Mr. Gadson claims a third extraordinary and compelling reason by asserting a separate ground pursuant to U.S.S.G. § 1B1.13(b)(4)(B), which defines a victim of abuse to include "(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to § 1B1.1." *Def.'s First Compassionate Release Addendum* at 2 (quoting U.S.S.G. § 1B1.13(b)(4)(B)). He reports that he experienced injury within the meaning of § 1B1.1 when an Officer Knoch "grabbed Defendant by the back of the neck and slammed his head against the wall, twice," "grabbed Defendant by the throat, choking him, and making it difficult for him to get a breath," "then punched him in the head and face area, with flurries of open and closed [f]ist hits," "attempted to trip defendant with his leg and slam him to the floor," "hitting him until he was on the floor," and "elbowed Defendant three times in the back of the head, very hard, and called for backup." *Id.* at 4-5 (citing U.S.S.G § 1B1.1(B)) (defining "bodily injury" as "[a] significant injury, e.g. an injury

that is painful and obvious, or is of a type for which medical attention ordinarily would be sought").

In the aftermath to this alleged assault, Defendant says he was denied adequate medical treatment and subject to excessive force as well as retaliation. *Id.* at 5-6.

### c.    Section 3553(a) Factors

Mr. Gadson first urges the Court to consider that his rehabilitation efforts, including that he has been shot-free ("except for the one he received in retaliation"), completed multiple Evidence Based Recidivism Reduction Programming, along with other classes designed to ease his re-entry, and was a Suicide Companion. *Def.'s First Compassionate Release Mot.* at 9.

Turning to the remaining section 3553(a) factors, he avers that "no sentence under the conditions he has had to endure, including the sexual abuse, accurately reflects the seriousness of the offense," and that he is not a danger to the community. *Id.* at 10.

### 2.    The Government's Opposition

The Government urges the Court to deny the Defendant's motion for compassionate release on the grounds that it is without merit and to dismiss his addendum for lack of administrative exhaustion "because it asserts an entirely new and separate ground for the relief he seeks" or, alternatively, for lack of merit. *Gov't's Opp'n to Def.'s First Compassionate Release Mot.* at 2 & n.3.

### a.   Extraordinary and Compelling Reasons

### i.   U.S.S.G. § 1B1.13(b)(1)

The Government contends that Mr. Gadson's assertion that he is suffering from "unspecified 'respiratory issues'" and "he has yet to be seen or treated regarding these issues" is "utterly untrue." *Id.* at 15 (quoting *Def.'s First Compassionate Release Mot.* at 3-4). Acknowledging that the Defendant "complained about headaches and dizziness to the medical staff" at FCI Ray Brook in May 2023, the Government cites the Defendant's medical records in support of its assertion that he "appears to have fully recovered from whatever ailments he was suffering from earlier that summer" by mid-August of that year. *Id.* at 15 (citing *id.*, Attach. 2, *Med. Records* at 4). The Government says that on August 16, 2023, for example, Mr. Gadson was evaluated by Ray Brook medical staff and responded to staff inquiries by stating: "No medical complaints. I'm just really pissed off and going on a hunger strike to make a point. I'm not going to eat or drink anymore." *Id.* at 16 (citing *Med. Records* at 4). According to the "comments" section of the evaluation, the Government reports that medical staff discussed the risks of hunger strike with the Defendant and provided him with a copy of the Hunger Strike Fact Sheet. *Id.* (citing *Med. Records* at 7). The Government also says that the medical records from this visit indicate the Defendant's vital signs were normal and he was "an otherwise perfectly healthy 33-year-old man." *Id.* (citing *Med. Records* at 7) ("Injury assessment for inmate who declared a hunger strike while in his unit. . .. Examined from waist up and knees down. No injuries voiced and none noted"). In a follow-up on August 17, 2023, the

17

medical provider states that the Defendant "denies injuries, weakness, dizziness and denies difficulty eating," and also observed that he had eaten breakfast that morning, suggesting he had ended his hunger strike. *Id.* (citing *Med. Records* at 11). Directly responding to Mr. Gadson's claim that he sent FCI Oxford Health Services an email on November 16, 2023 claiming he had been suffering from respiratory issues since March of that year, the Government cites the Defendant's medical records from October 10, 2023 "documenting the fact that Gadson '[d]enied' having any respiratory issues—or any other health issues—when seen on that date at FCI Oxford shortly after he arrived at that facility." *Id.* at 17 n.12 (citing *id.*, Attach. 3, *Med. Records* (*Med. Records 2*)).

In sum, the Government proffers "not only has Gadson failed to establish as a factual matter that he is suffering from 'a medical condition that requires long-term or specialized medical care that is not being provided,' U.S.S.G. §[ ]1B1.13(b)(1)(C), that factual claim is completely belied by the medical record." *Id.* at 17. The Government additionally insists that even if medical records did support his claim that he is suffering from "respiratory issues," this would not constitute the type of "extraordinary and compelling" medical condition warranting early release pursuant to U.S.S.G. § 1B1.13(b)(1). *Id.* (collecting cases from other federal district courts).

### ii.    U.S.S.G. § 1B1.13(b)(4)(A)

In response to Mr. Gadson's assertion of "extraordinary and compelling" reasons pursuant to U.S.S.G. § 1B1.13(b)(4)(A), the Government insists that a sentence reduction on this basis also requires "the misconduct must be established

18

by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."  *Id.* at 18 (quoting U.S.S.G. § 1B1.13(b)(4)(A)).  Courts have routinely held these prerequisites must be met, the Government reports, and Mr. Gadson's unsupported allegations fail to satisfy this standard for relief.  *Id.* at 18-19 (citing cases from other federal district courts and the Third Circuit).

The Government additionally contests Mr. Gadson's claim that BOP ignored his complaints of sexual abuse as "categorically false."  *Id.* at 19.  The Government reports that it contacted BOP counsel after receiving Mr. Gadson's first compassionate release motion and learned that the Warden at FCI Ray Brook appointed SIS Lieutenant Mark G. McLean to investigate the allegations of abuse contained in the Defendant's August 14, 2023 email.  *Id.* at 20.  Lieutenant McLean interviewed the Defendant on August 16, 2023, at which time Mr. Gadson reported that CMC Matteau told him "if Gadson took care of Matteau, then Matteau would take care of Gadson," and "stuck his tongue in his cheek while he made the comment, which Gadson interpreted as sexual in nature."  *Id.*  Mr. Gadson additionally reported to Lieutenant McLean that "at no time did Matteau actually request sexual favors," although "Matteau smiled at him and told Gadson to stop avoiding him" on a Saturday towards the end of July 2023 when the Defendant was walking through the metal detector building.  *Id.*  In sum, the Government argues the mere solicitation of sexual favors does not rise to the level of an "extraordinary and compelling" reason,

and disputes as a threshold matter that the Defendant has met his burden of establishing this alleged abuse even occurred. *Id.* at 21.

### iii.    U.S.S.G. § 1B1.13(b)(4)(B)

The Government also responds to the Defendant's third "extraordinary and compelling" reason, raised in his addendum. As an initial matter, the Government argues that this request should be denied for failure to satisfy the administrative exhaustion requirement because the Defendant mailed his addendum directly to the Court "nearly a month after the Warden at FCI Oxford denied [his] first request for a reduction in sentence," and "Gadson knew or should have known that he had to submit a second request to the Warden at FCI Oxford after the alleged assault." *Id.* at 23-24.

If the Court determines Mr. Gadson had satisfied the administrative exhaustion requirement, however, the Government nonetheless insists the Defendant's third ground fails for the same reason as his claim brought pursuant to U.S.S.G. § 1B1.13(b)(4)(A); namely, that the Defendant has not established the physical abuse he alleges was the subject of a criminal conviction or a finding of liability in a civil case or administrative proceeding. *Id.* at 24.

The Government also informs the Court that an incident report from February 1, 2024, the day the Defendant alleges he was physically abused by medical staff and corrections officers at FCI Oxford, documents that he was "placed in restraints because he failed to comply with a direct order from a corrections officer." *Id.* (citing *Def.'s First Compassionate Release Addendum*, Attach. 4, *Email to Warden (Ray*

*Brook)* and *Copy of Incident Rep. (Oxford)*).  "There is simply no evidence . . . to suggest that Gadson was the victim of excessive force," the Government insists.  *Id.* at 24-25.

### b.    Section 3553(a) Factors

Although the Government asserts the Court could deny Mr. Gadson's first compassionate release motion on his failure to establish "extraordinary and compelling" reasons alone, the Government proceeds to argue that the Defendant has also not shown the section 3553(a) factors counsel in favor of his early release.  *Id.* at 21.  The Government contends that the Defendant's offense was serious and reminds the Court that at sentencing it told Mr. Gadson that "[t]his type of financial fraudulent criminal conduct . . . can have devastating effects for its victims, that is numerous people's credit potentially is ruined, at least for a time" and "[o]f course, the institutions lending the money don't see repayment."  *Id.* (citing *Tr. of Proceedings* at 53, No. 2:19-cr-122-JAW-2 (ECF No. 230)).  Further, the Government says that the Court at sentencing emphasized that "the seriousness of the criminal conduct here is underscored by the fact that it was an ongoing scheme, not simply one or two isolated incidents.  There's true social harm associated with this type of fraud, and the sentencing ranges that Mr. Gadson faces reflect that it is conduct which deserves a serious sentence."  *Id.* (citing *Tr. of Proceedings* at 53).  The Government also argues that the Defendant has a "lengthy criminal history," and that he has served "only a fraction of the term of imprisonment," concluding that early release at this time would be inconsistent with the section 3553(a) factors.  *Id.* at 22-23.

At bottom, the Government urges the Court to deny the Defendant's first motion for compassionate release and dismiss his addendum. *Id.* at 25.

### 3.    The Defendant's Reply[6]

Mr. Gadson replied on June 3, 2024. *Def.'s First and Second Compassionate Release Reply*. As an initial matter, Mr. Gadson urges the Court to "consider his pleadings and arguments in a liberal matter," reminding the Court that he is appearing pro se and insisting "he has written his pleadings [while] undergoing extensive mental, emotional tortures and sexual assaults, abuses, physical abuses via various 'above the law staff[] of the FCI-OXFORD.'" *Id.* at 1.

The Defendant proceeds to argue that "'All' the men and wom[e]n in the FBOP's custody are **NOT** criminals, inclusive of Mr. Gadson, for what they have been accused for and or plead[ed] to[]. Mr. Gadson is one among such 'pools' of innocent citizens of this beautiful nation, with fear, and also to avoid more harms, took the so[-]called 'plea deal.'"[7] *Id.* at 2 (emphasis in original). He next says that he "ha[s] . . . t[aken] full responsibility for my alleged action," but proceeds to argue "he was having a patent ineffective assistance [of counsel] on several parts of the sentencing and guilty plea situations. . .. and therefore . . . has endured continued prejudice and . . .

---

[6]    Mr. Gadson's reply responds to the Government's opposition to his first and second compassionate release motions. The Court recounts only the relevant portions of the reply in this section and details the Defendant's reply to the Government's opposition to his second compassionate release motion below.

[7]    Mr. Gadson has a pending motion to vacate, set aside or correct sentence on both dockets, which asserts that his sentence should be amended due to ineffective assistance of counsel in, among other things, his plea negotiations. The Court does not address the 28 U.S.C. § 2255 motion in this order and, as such, does not reach the Defendant's similar arguments asserted in his compassionate release motions.

suffered injury in fac[t]." *Id.* at 2-3. He next reasserts the grounds raised in his first compassionate release motion and addendum, namely that he has respiratory issues which the BOP is not adequately treating, that he was the victim of sexual abuse, and that he has been retaliated against for raising these issues internally and with the Court. *Id.* at 7-8. In addition, the Defendant argues that he is suffering from "severe health ailments" due to "physical assaults by . . . staff of the FCI-OXFORD (Mr. Knoch), he has started with new health scares inclusive of 'pinch nerve[] break down[,'] lower back pains that cause[] unbearable and continuous pains, and it clearly appears that Mr. Gadson will end up in a surgery eventually 'to REPAIR' such harms." *Id.* at 7 (emphasis in original).

Turning to the section 3553(a) factors, the Defendant insists he is not a violent offender, the Court at sentencing did not impose a fine, and he has undertaken "extensive rehabilitation." *Id.* at 8-9 (Defendant's emphasis). He proceeds to assert that he is a "model inmate[]" and has already served approximately sixty-five months of a 110-month sentence, constituting approximately sixty-one percent. *Id.* at 8 (emphasis in original).

## B.    Legal Discussion

### 1.    Administrative Exhaustion

#### a.    Legal Standard

In 18 U.S.C. § 3582(c)(1)(A), Congress plainly laid out the threshold requirements for a defendant to file a motion for sentence reduction directly in court, providing that a court may only modify a term of imprisonment where:

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ..

18 U.S.C. § 3582(c)(1)(A); *see also* quoting *United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023) ("a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request").

This Court has previously held that "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement." *United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 20672, at *10-11 (D. Me. Feb. 3, 2021) (collecting cases applying a motion-specific exhaustion requirement). As this Court explained in *Cain*: "[e]ven though [the defendant] made a similar request for release [months before], these factors may well have changed in the ensuing months and the statute contemplates that the Warden be given an opportunity to make an internal assessment based on then current conditions." *Id.* at *12-13. While motion-specific exhaustion is required, the similar yet distinct question of issue-specific exhaustion remains unresolved in this circuit. *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today"); *accord United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me.

Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit").

Other circuit courts of appeal require issue-specific exhaustion in the context of compassionate release. For example, the Seventh Circuit ruled in 2021 that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578 (10th Cir. 2021). Yet other circuit courts have disagreed, holding that § 3582(c)(1)(A) does not require issue exhaustion and the Supreme Court has not yet addressed the issue and concluded otherwise. *See, e.g., United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022), *cert. denied*, 144 S. Ct. 1007 (2024) (holding the "[d]istrict court erred when it concluded that it could not consider defendant's non-medical arguments with respect to his motion for compassionate release due because he did not raise them in request for compassionate release made to [BOP] because 18 U.S.C. § 3582(c)(1)(A) did not require issue exhaustion"). The First Circuit has not reached the same conclusion. *Texeira-Nieves*, 23 F.4th at 53.

### b. Discussion

The Government argues Mr. Gadson's addendum to his first compassionate release motions fails to satisfy administrative exhaustion because it raises a different ground for early release that the Defendant had not previously presented to the Warden. As an initial matter, the Court agrees with the Government that Mr.

25

Gadson's addendum asserts an "extraordinary and compelling" reason pursuant to U.S.S.G. § 1B1.13(b)(4)(B) which the Defendant did not first bring to the Warden's attention. *Compare Def.'s First Compassionate Release Addendum* at 2-6 (recounting alleged physical abuse) *with Def.'s First Compassionate Release Mot.*, Attach. 2, *Req. to Warden* at 2 (raising "Health/Medical Issues Not Being Treated by the BOP" and "Victim of Sexual Abuse by a Staff Member").

However, as noted, the First Circuit has not resolved whether a defendant should be barred from proceeding with a motion for compassionate release if she failed to raise with the BOP the same issues she is presenting to the district court. *Waite*, 2022 U.S. Dist. LEXIS 133073, at *5 ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"). As the First Circuit has not decided whether issue exhaustion is required in this circuit, the Court proceeds to consideration of the merits of Mr. Gadson's addendum. *See United States v. Doe*, No. 1:17-cr-00091-JAW-1, 2024 U.S. Dist. LEXIS 205398, at *20-21 (D. Me. Nov. 12, 2024) (addressing merits of the defendant's claim even though his compassionate release claim would have been barred if issue exhaustion applied in the First Circuit).

### 2.    Merits

#### a.    Legal Standard for Sentence Reduction

As explained by the First Circuit, 18 U.S.C. § 3582(c)(1)(A) "carved out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'" *Quirós-Morales*, 83 F.4th at 84 (quoting *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021)). The statute allows district

26

courts to grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

In 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814. *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814. The Sentencing Commission issued an accompanying policy statement providing further guidance on the six categories of extraordinary and compelling bases warranting a sentence reduction: the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b).

In addition to extraordinary and compelling reasons, a defendant must demonstrate a grant of sentence reduction comports with the factors described in 18 U.S.C. § 3553(a). *Saccoccia*, 10 F.4th at 3. This statutory section provides that the Court must consider, *inter alia*:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

27

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

### b.    Discussion

### i.    Extraordinary and Compelling Reasons

Mr. Gadson raises three grounds which he argues amount to extraordinary and compelling reasons justifying his early release: his medical conditions, alleged sexual abuse, and alleged physical abuse.  The Court addresses each.

### aa.    U.S.S.G. § 1B1.13(b)(1)

Mr. Gadson contends his "respiratory issues" amount to an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1)(C).  *Def.'s First Compassionate Release Mot.* at 3-4.  Section 1B1.13(b)(1) provides various categories of medical circumstances that rise to the level of warranting judicial relief; subsection C considers a defendant "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). The Government contests both that Mr. Gadson has shown he suffers from a medical condition "that requires long-term or specialized medical care," and that his condition is not being treated by the BOP.

After reviewing the record, Mr. Gadson does not provide the Court with sufficient information to conclude he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As to whether he has a medical issue which "requires long-term or specialized medical care," Mr. Gadson does not tell the Court much more other than he has generalized "respiratory issues" which he believes "were brought on by the unsanitary conditions he was exposed to at SARNAC," namely black mold and free-flowing feces. *Def.'s First Compassionate Release Mot.* at 3-4.

Mr. Gadson has also not provided sufficient evidence for the Court to conclude he is not currently receiving adequate care for his alleged respiratory issues at FCI Oxford. U.S.S.G. § 1B1.13(b)(1)(C). He reports that he began to experience his respiratory issues in late March of 2023 and has not "ever[] b[een] seen or treated" for these issues. *Id.* at 4. However, he has given the Court no information on which to conclude that BOP medical staff are denying him care or providing inadequate treatment. The Government, in contrast, responds to Mr. Gadson's claim that he sent FCI Oxford Health Services an email on November 16, 2023 stating that he had been suffering from respiratory issues since March of that year by pointing to the Defendant's medical records from October 10, 2023 "documenting the fact that Gadson '[d]enied' having any respiratory issues – or any other health issues – when seen on that date at FCI Oxford shortly after he arrived at that facility." *Gov't's First Compassionate Release Opp'n* at 17 n.12 (citing *Med. Records 2*).

Mr. Gadson also does not establish that his respiratory issues and allegedly deficient treatment place him "at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

A defendant bears the burden of establishing his entitlement to compassionate release. *See, e.g.*, *United States v. Galiany-Cruz*, No. 22-1196, 2023 U.S. App. LEXIS 26539, at *1 (1st Cir. June 6, 2023) ("movant bears the burden of establishing extraordinary and compelling reasons") (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)); *United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 U.S. Dist. LEXIS 66670, at *20 (D. Me. Apr. 6, 2021) ("[movant] bears the burden to demonstrate entitlement to compassionate release"). While the Court is sympathetic to Mr. Gadson's asserted respiratory issues, his filings fail to provide the Court with sufficient information to conclude his condition rises to the level of an extraordinary and compelling medical condition within the meaning of U.S.S.G. § 1B1.13(b)(1)(C). Mr. Gadson's conclusory statements that his respiratory issues amount to "a medical condition that is not being treated which puts him at risk of serious deterioration of health," *Def.'s First Compassionate Release Mot.* at 4, are insufficient, particularly in light of the contradictory information in his BOP medical record. Mr. Gadson must demonstrate through use of evidence that his condition is extraordinary and compelling within the statutory definition of the phrase, which he has not done. The Court concludes Mr. Gadson has not shown an extraordinary and compelling reason pursuant to U.S.S.G. § 1B1.13(b)(1)(C).

### bb.    U.S.S.G. § 1B1.13(b)(4)(A)

Mr. Gadson separately alleges he experienced sexual abuse amounting to an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(4)(A). That provision of the Sentencing Guidelines states:

> (4) VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
> > (A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) . . ..
> >
> > . . . .
> >
> > that was committed by, or at the direction of, a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody or control over the defendant.
> >
> > For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(b)(4).

The Defendant specifically asserts that he experienced conduct as defined in 18 U.S.C. § 2246(2) ("Contact between the mouth and penis") when, in January and July of 2023, "[t]he CMC at Ray[][B]rook on multiple occasions, asked Defendant to perform fellatio on him [and] [o]n each of these occasions, Defendant refused." *Def.'s First Compassionate Release Mot.* at 4-6. The Government contests (1) that these requests occurred; (2) that, if they did occur, they constitute a "sexual act" under 18 U.S.C. § 2246(2); and (3) that Mr. Gadson has satisfied the Sentencing Guidelines' requirement of a conviction or administrative finding.

31

First, while again sympathetic to Mr. Gadson's perceived experience, the Court agrees with the Government that Mr. Gadson has not alleged that he experienced a "sexual act" within the meaning of the relevant statute.  Mr. Gadson argues his allegation that "CMC at Ray[][B]rook on multiple occasions, asked Defendant to perform fellatio on him" amounts to "sexual abuse" under BOP Program Statement 5324.12, which includes within its definition include "(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse,[] or gratify sexual desire," and "(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1) through (5)."  *Def.'s First Compassionate Release Mot.* at 6 (quoting BOP Program Statement 5324.12).  However, U.S.S.G. § 1B1.13(b)(4)(A) does not rely on the Program Statement's definitions, but instead incorporates the definitions from 18 U.S.C. § 2246(2), which defines a "sexual act" more narrowly as:

**(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

**(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

**(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

**(D)** the intentional touching, not through the clothing, or the genitalia of another person who had not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

U.S.S.G. § 1B1.13(b)(4)(A) (emphasis in original).  Simply put, Mr. Gadson has not alleged facts falling within the applicable statutory definition of a "sexual act" under the United States Sentencing Guideline definition.  The Court thus ends its inquiry here.

### cc.   U.S.S.G. § 1B1.13(b)(4)(B)

Mr. Gadson asserts a third extraordinary and compelling reason, in this instance pursuant to U.S.S.G. § 1B1.13(b)(4)(B).  This provision applies to a "victim of abuse," considering in this context "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to § 1B1.1 (Application Instructions)." U.S.S.G. § 1B1.13(b)(4)(B).  As with § 1B1.13(b)(4)(A), U.S.S.G. § 1B1.13(b)(4)(B) additionally requires "the misconduct must be established "by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." *Id.*

Mr. Gadson alleges that he is entitled to sentence reduction pursuant to this provision based on the assault by Officer Knoch, who he alleges "grabbed Defendant by the back of the neck and slammed his head against the wall, twice," "grabbed Defendant by the throat, choking him, and making it difficult for him to get a breath," "then punched him in the head and face area, with flurries of open and closed [f]ist hits," "attempted to trip defendant with his leg and slam him to the floor," "hitting him until he was on the floor," and "elbowed Defendant three times in the back of the head, very hard, and called for backup."  *Def.'s First Compassionate Release*

*Addendum* at 4-5 (citing U.S.S.G § 1B1.1(B)) (defining "bodily injury" as "[a] significant injury, e.g. an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought").  The Government, in addition to contesting this ground based on administrative exhaustion as previously discussed, insists Mr. Gadson has not established his entitlement to early release based on this provision because (1) he has not established the physical abuse he alleges was the subject of a criminal conviction or a finding of liability in a civil case or administrative proceeding; and (2) an incident report from February 1, 2024, the day the Defendant alleges he was physically abused, documents that he was "placed in restraints because he failed to comply with a direct order from a corrections officer."[8]  *Gov't's First Compassionate Release Opp'n* at 24-25 (citing *Email to Warden (Ray Brook) and Copy of Incident Rep. (Oxford)* at 2 (citation amended)).

The Court begins with the Government's first objection, as it is dispositive on this issue.  The Government is correct that U.S.S.G. § 1B1.13(b)(4)(B) requires "the misconduct must be established "by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."

---

[8]       The February 1, 2024 incident report states, in full: "Inmate GADSON, BERNARD . . . refused to commit to a pat search at 14[:]44, while in the Law Library. I then placed him [in] hand restraints. I told inmate GADSON not to face me and to face the opposite direction. He refused orders and tried to face me in an aggressive manner. I tried to keep my left hand on the restraints. I struggled to keep control of the restraints, while giving orders for inmate GADSON to stop resisting and to keep control of inmate GADSON[,] he was placed on the wall of the Education Hallway. I again gave him several orders to stop resisting and then place[d] him on the ground. Inmate GADSON resisted the entire use of force. While on the ground Officer Wasson placed inmate GADSON in leg restraints." *Email to Warden (Ray Brook) and Copy of Incident Rep. (Oxford)* at 2.

*Gov't's First Compassionate Release Opp'n* at 24-25; U.S.S.G. § 1B1.13(b)(4)(B). Here, Officer Knoch (or anyone else) has not, to the Court's knowledge, been criminally convicted, found to have committed or admitted this misconduct in a civil case, or found to have committed this alleged misconduct in an administrative proceeding. U.S.S.G. § 1B1.13(b)(4)(B). Mr. Gadson further makes no allegation of undue delay in any such proceedings.

The Sentencing Guidelines provide an exception to this procedural requirement if "the defendant is in imminent danger," a caveat potentially relevant here given Mr. Gadson's repeated allegations of fear and abuse while incarcerated. However, Mr. Gadson's ground for relief under § 1B1.13(b)(4)(B) is an incident involving Officer Knoch at FCI Oxford. To the Court's knowledge, the Defendant is currently incarcerated at FCI Florence, a separate federal facility in another state, so there is no allegation that he is in imminent danger at his present facility.[9] *See Bernard's Second Resp. to Gov't's Aug. 28th 2024 Letter to the Ct.*, Attach. 34, Envelope, No. 2:19-cr-00122-JAW-2 (ECF No. 281); *Additional Attachs.* No. 2:19-cr-00122-JAW-2 (ECF No. 282); *see also United States v. Rossignol*, No. 1:14-cr-00033-JAW-1, 2024 U.S. Dist. LEXIS 83496, at *6 (D. Me. May 8, 2024) ("[the defendant]

---

[9]    In a letter docketed on December 4, 2024, apparently written soon after Mr. Gadson arrived at FCI Florence, the Defendant wrote, "I was moved here as a scare tactic as a threat as retaliation for my willingness to make a stand for myself . . .. I am still in fear for my life I am scared of staff and I am scared to continue filing reports of the wrong doing." *Def.'s 12/4/24 Letter* at 2. While the Court appreciates Mr. Gadson's perception that he is in danger at his new facility, his December 4, 2024 letter does not alter the Court's determination that he is not in "imminent danger" within the meaning of the relevant statute.

alleged that the abuse occurred at FCI Ray Brook and he is currently incarcerated at Fort Dix, so there is no allegation that he is in imminent danger").

In conclusion, the Court determines Mr. Gadson has not established an extraordinary or compelling reasons justifying his early release.

### ii.        Section 3553(a) Factors

The Court now turns to the § 3553(a) factors to evaluate whether Mr. Gadson's sentence is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *Id.*

Beginning with Mr. Gadson's history and characteristics, he has dealt with more than his fair share of difficulties. By Mr. Gadson's report, his mother, who suffers from schizophrenia, delusions, and bipolar disorder, abused the Defendant daily until he was approximately thirteen years old. *Pre-Sentence Investigation Report*, No. 2:19-cr-00122-JAW-2 ¶ 68 (ECF No. 2014) (*PSR*). In the fifth grade, the Defendant recalls that he ran away from home; although he returned temporarily, he left home permanently when he was thirteen years old, at which point he "began bouncing around friends' houses" and spending time on "the streets." *Id.* However, his maternal half-sister advised that their childhood was "good" and free of abuse of any kind, and that the Defendant was "never a runaway child." *Id.*

His criminal history is extensive, with the first documented offense occurring in 2003 when the Defendant was thirteen years old. *Id.* ¶ 42. The Defendant's early criminal history involved wanton damage to personal property, assault with a dangerous weapon, assault and battery with a dangerous weapon, breaking and entering with intent to commit a felony. *Id.* ¶¶ 42-45. These confrontations with the

criminal justice system as a juvenile did not have much of a deterrent effect; Mr. Gadson's record of trespass, unlawful firearm possession, and breaking and entering continued into adulthood. *Id.* ¶¶ 46-48.

The nature and circumstances of the offenses for which Mr. Gadson is presently incarcerated are, in no unclear terms, serious. The PSR establishes that between 2018 and 2019, Mr. Gadson led a bank fraud conspiracy in which co-conspirators posing as individual victims applied for bank loans at various federally insured financial institutions in New England, seeking to obtain loan proceeds which they never intended to repay. *PSR* ¶ 11. Mr. Gadson's victims were often members of the Armed Forces with high credit scores, enabling the Defendant and his co-conspirators to "receive instant approval" from the banks they targeted. *Id.* The Defendant and his co-conspirators used their victims' social security numbers, dates of birth, and counterfeit driver's licenses in the commission of this offense. *Id.* Mr. Gadson's role in this conspiracy was substantial: among other things, he purchased biographical and credit information of real people from the "darknet," procured the counterfeit driver's licenses, opened email accounts in the victims' names, fabricated paystubs and residential lease agreements in the victims' names, was responsible for identifying the targeted banks, and received sixty percent of the proceeds from the fraudulent loans. *Id.* In total, the Defendant and his co-conspirators targeted nearly two dozen banks and credit unions over an eight-month period and obtained $129,100.00 in proceeds from their victims. *Id.* ¶ 16.

On June 20, 2019, Mr. Gadson was indicted for aiding and abetting attempted bank fraud, aiding and abetting aggravated identity theft, and conspiracy to commit bank fraud and aggravated identity theft; as noted, a superseding indictment charged the Defendant with additional crimes stemming from the same conduct. *Id.* ¶¶ 1, 3. He was arrested on August 14, 2019 and initially detained in the District of Massachusetts; however, he was subsequently extradited to Maine and released pending trial on September 25, 2019. *Id.* The PSR establishes that Mr. Gadson continued to engage in identity theft and bank fraud while on supervised release, and traveled outside out state without the permission of his probation officer. *Id.* ¶¶ 18-21. Both actions violated his bail conditions. *Id.* ¶ 1.

The Magistrate Judge revoked the Defendant's bail and issued a written detention order observing: "[T]he crimes at issue reflected both deliberate planning and detail in their execution, adding to their egregious nature. Further adding to the egregiousness of the behavior was the fact that the new crimes were the very same conduct or type of conduct that is alleged to have been committed in the indictment." *Order of Detention Pending Trial* at 2-4, No. 2:19-cr-00122-JAW-2 (ECF No. 184). Finally, citing the Defendant's "history of using aliases, his access to funds, his criminal history, including a pattern of similar activity, his noncompliance while on pretrial release," and his "criminal history, including several charges for violent crimes," the Magistrate Judge concluded that Mr. Gadson posed a flight risk and a danger to the community. *Id.*

At sentencing, the Court sentenced Mr. Gadson to a total aggregate term of 110 months of imprisonment, a sentence below the recommended Guidelines range of 124-149 months. *Tr. of Proceedings* at 30, 51-52, 59. The First Circuit upheld Mr. Gadson's sentence of incarceration on appeal. *Op. of USCA* at 2 ("[W]e affirm Gadson's prison sentence").

After reviewing the facts of Mr. Gadson's case and considering the 3553(a) factors anew, the Court does not now reach a different conclusion. Mr. Gadson received a below-Guidelines sentence for a serious crime, despite a litany of prior criminal conduct. When granted pretrial release, Mr. Gadson flouted the Court's faith in him, violating multiple bail conditions and victimizing additional members of the public. Also, despite his insistence to the contrary, the Court notes that the Defendant does not appear to have taken responsibility for his actions. To the contrary, in his reply to the Government's opposition to his first compassionate release motion, he says: "'All' the men and wom[e]n in the FBOP's custody are **NOT** criminals, inclusive of Mr. Gadson, for what they have been accused for and or plead to[]. Mr. Gadson is one among such 'pools' of innocent citizens of this beautiful nation, with fear, and also to avoid more harms, took the so called 'plea deal.'" *Def.'s Reply* at 2 (emphasis in original). This is not the statement of someone who has accepted responsibility for his actions.

### C.    Conclusion

For all these reasons, the Court DISMISSES without prejudice Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. §[ ]3582(c)(1)(A), No. 2:19-cr-00122-JAW-2 (ECF No. 248); 2:21-cr-00163-JAW-1 (ECF No. 98).

## IV.    THE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(2)

### A.    The Parties' Positions

#### 1.    The Defendant's Motion

On March 15, 2024, the Defendant submitted a second compassionate release motion, this pursuant to 18 U.S.C. § 3582(c)(2).  *Def.'s Second Compassionate Release Mot.* at 1.  In this motion, Mr. Gadson argues he is entitled to a sentence modification based on the 2023 amendments to U.S.S.G. § 3E1.1, which he insists "make[] it h[]arder to not receive the 3-level reduction for acceptance of responsibility."  *Id.* at 2 (capitalization altered) (emphasis removed).  Mr. Gadson contends that "not only did [he] immediately accept responsibility by pleading guilty, he waived indictment on the contempt charge and plead to an information" and adds that "[h]e also, quite properly, objected to several relevant conduct enhancements in his PSR, specifically one being assigned a leadership role, which the Court denied."  *Id.* at 3.  The Defendant alleges "the Government claimed that simply because he had a contempt charge, that he had not shown responsibility and the Court agreed . . . despite the Government already acknowledging in his plea agreement that he qualified for the Acceptance of Responsibility."  *Id.*  He says "[t]here was/is no argument that he qualifies under § 3E1.1(b) for a 1 Level reduction."  *Id.*

Mr. Gadson reports that, at sentencing, the Court determined he did not qualify for a downward adjustment for acceptance of responsibility because (1) he contested his leadership role and (2) he "disobeyed his conditions of release by traveling outside the District of Massachusetts on multiple occasions without the knowledge or permission of his probation officer." *Id.* at 4. The Defendant takes particular issue with the second consideration, stating "the travelling was not listed as relevant conduct and Defendant never denied it." *Id.* Mr. Gadson additionally avers that "objecting to his leadership role should not disqualify him from acceptance of responsibility." *Id.*

He seeks a five-level reduction to his Guidelines offense level based on a three-level adjustment for acceptance of responsibility and an additional two-level reduction as "va[ri]ance . . . for Defendant's role in mitigating the spread of COVID-19," which he claims "[m]any courts gave . . . to those in Defendant's position" because he consented to video-conferencing. *Id.* at 5. By his count, this would result in a total offense level of 22; together with his criminal history category IV, he says, this yields a Sentencing Guidelines range of 63-78 months. *Id.*

Mr. Gadson also argues the section 3553(a) factors counsel in favor of his early release. *Id.* at 6

### 2.    The Government's Opposition

The Government opposed Mr. Gadson's second compassionate release motion on April 30, 2024, insisting that the Defendant's sentence reduction motion "misapprehends the nature and effect of the recent amendments to Section 3E1.1, is

41

without merit, and should be summarily denied." *Gov't's Second Compassionate Release Opp'n.* at 1.

At sentencing, the Government says, the Court determined the Defendant was not entitled to acceptance of responsibility because "he had frivolously contested relevant conduct, falsely denied his role in the offense, and committed new crimes while on pretrial release." *Id.* at 2 (citing *Tr. of Proceedings* at 50-51). The Government reports that Mr. Gadson's appeal to the First Circuit included his contention that "the district court erred in denying the three-level reduction for acceptance of responsibility," which the First Circuit rejected. *Id.* (quoting *United States v. Gadson*, 77 F.4th 16, 22 (1st Cir. 2023) (noting that defendants who plead guilty are "not entitled to a downward adjustment for acceptance of responsibility as a matter of right," and ruled that the district court had not clearly erred in determining Mr. Gadson had "not accepted responsibility" by falsely denying his role in the fraud scheme)).

Taking a step back, the Government also notes that Mr. Gadson's second compassionate release motion should fail to leave the starting gate because "the recent amendments to Section 3E1.1 (Amendment 820) did not change or modify the portion of Section 3E1.1 or the corresponding application note that the district court relied on in denying Gadson credit for acceptance of responsibility," and, as such, it should be summarily denied. *Id.* at 3. The relevant amendment was aimed at § 3E1.1(b), which "was not even an option [in Mr. Gadson's case] once the district court determined that [he] was not entitled to credit for acceptance of responsibility under

42

Section *3E1.1(a)*." *Id.* at 4-5 (emphasis added by the Government) (citing Supplement to App. C (Nov. 1, 2023) at 234 ("The Commission promulgated this amendment to decrease variations between jurisdictions in applying §[ ]3E1.1(b)"). The Government insists "[b]ecause qualifying for a two-level decrease under Section 3E1.1(a) was then, and remains now, a prerequisite to a further reduction under subsection (b), and because the court found that Gadson did not qualify for a reduction under Section 3E1.1(a), the 2023 amendments to subsection *(b)* had no impact on [his] sentencing range," he is not entitled to a sentence reduction under 18 U.S.C. § 3582(c)(2). *Id.* at 5.

### 3.    The Defendant's Reply

The relevant portion of Mr. Gadson's June 3, 2024 reply first points out that the Government's opposition to his second compassionate release motion "'<u>did not</u>' oppose the request . . . for 2 . . . level reduction for proceeding by a video" and thus has effectively waived any objection to this requested reduction. *Def.'s First and Second Compassionate Release Reply* at 3 (Defendant's emphasis). Second, he characterizes the Government's opposition to his request for a 3-level downward adjustment as based on "<u>fantastic arguments</u> [that] Mr. Gadson is not entitled to[] the 3 points reduction, since he 'frivo[l]ously' contested the relevant conduct matters," insisting "[s]uch an argument shall fail on its face, since that[ is] not supported by the facts." *Id.* at 4 (Defendant's emphasis). He proceeds to contest the "<u>new f[a]ntastic allegations</u>" in the revised PSR, "falsely accusing him of a so called 'ring leader,'" which he says he did not plead guilty to and Judge Levy at sentencing "was

43

misled" by. *Id.* (citing *Tr. of Proceedings* at 54-55) (Defendant's emphasis).   He

proceeds to challenge the evidence asserted at sentencing.[10]  *Id.* at 5-6. Mr. Gadson

additionally asserts that the section 3553(a) factors support sentence reduction.  *Id.*

at 8-9.

### B.    Legal Standard

A district court may modify a defendant's term of incarceration pursuant to 18

U.S.C. § 3582(c)(2) if the defendant was sentenced based on a sentencing range that

has subsequently been lowered by the Sentencing Commission.   18 U.S.C. §

3582(c)(2).   In *United States v. Dillon*, 560 U.S. 817 (2010), the United States

Supreme Court described the basis for such a sentence reduction as a "two-step

inquiry."  *Id.* at 826.  "At step one, § 3582(c)(2) requires the court to follow the

Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a

sentence modification and the extent of the reduction authorized."  *Id.* at 827.  "At

step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable §

3553(a) factors and determine whether, in its discretion, the reduction authorized by

reference to the policies relevant at step one is warranted in whole or in part under

the particular circumstances of the case."  *Id.*

Amendment 820 to the Sentencing Guidelines, which went into effect in

November of 2023, modified U.S.S.G. § 3E1.1(b) (2021) by inserting after "1 additional

level" the following:

---

[10]      As noted, Mr. Gadson has a pending motion to vacate, set aside or correct his sentence, which raises similar arguments.  These assertions are not properly before the Court on a motion for compassionate release and it will address them in ruling on the 28 U.S.C. § 2255 motion.

> The term "preparing for trial" means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. "Preparing for trial" is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists. Preparations for pretrial proceedings (such as litigation related to a charging document, discovery motions, and suppression motions) ordinarily are not considered "preparing for trial" under this subsection. Post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered "preparing for trial."

U.S.S.G. § 3E1.1(b) (2023); *see United States v. Caldwell*, 2025 U.S. App. LEXIS 835, at *2-3 (11th Cir. Jan. 14, 2025) (discussing Amendment 820). Amendment 820 did not alter the fact that a defendant can only receive a third acceptance of responsibility point under U.S.S.G. § 3E1.1(b) if the defendant has already received a two-level reduction under § 3E1.1(a). U.S.S.G. § 3E1.1(b). Further, "Amendment 820 is not retroactive, as it is not listed among the retroactive amendments in the applicable policy statements." *Caldwell*, 2025 U.S. App. LEXIS 835, at *3 (citing U.S.S.G. § 1B1.10(d); 18 U.S.C. § 3582(c)(2)).

## C.    Discussion

The Court does not grant Mr. Gadson's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). First, "Amendment 820 is not retroactive, as it is not listed among the retroactive amendments in the applicable policy statements, and therefore, it cannot have the effect of lowering his sentence retroactively." *Caldwell*, 2025 U.S. App. LEXIS 835, at *3 (citing U.S.S.G. § 1B1.10(d); 18 U.S.C. § 3582(c)(2)); *cf. United States v. Tobar*, 73 Fed. App. 471, 472 (1st Cir. 2003) (a district court lacks authority to reduce a defendant's sentence if the amendment at issue "is *not*

retroactive") (emphasis in original); *accord United States v. Wurie*, 867 F.3d 28, 35, 37 (1st Cir. 2017) ("sentencing courts are not mandated to take into consideration non-retroactive substantive amendments to the Guidelines").

Second, even if Amendment 820 did apply retroactively, it would not lower Mr. Gadson's Guidelines range because Amendment 820 only concerns the third acceptance of responsibility point, which a defendant is only eligible to receive under U.S.S.G. § 3E1.1(b) if he or she has already received a two-level reduction under § 3E1.1(a). U.S.S.G. § 3E1.1(b). The Government is correct that, in Mr. Gadson's case, "the availability of an additional one-level decrease under U.S.S.G. § 3E1.1(b) was not even an option once the district court determined that [he] was not entitled to credit for acceptance of responsibility under Section *3E1.1(a)*." *Gov't's Second Compassionate Release Opp'n* at 5 (Government's emphasis).

Third, Mr. Gadson's attack on Judge Levy's findings at the sentencing hearing and his guideline calculations is utterly frivolous and based on a false rewriting of the history of this case. At the sentencing hearing, Mr. Gadson objected to the leadership enhancement under United States Sentencing Guideline § 3B1.1(b), alleging he was not the person identified by a co-conspirator as "Gio." *Def.'s Sentencing Mem. Regarding Guideline Objs.* at 3-10 (ECF No. 215). The Government argued that Mr. Gadson was in fact the person known as Gio. *Gov't's Sentencing Mem.* at 10-13 (ECF No. 218). At the sentencing hearing, Judge Levy distilled the role enhancement arguments of counsel:

> I want to be clear what the issue is. As I understand the issue, it is if I find that the Government fails to establish that Mr. Gadson is Gio, then

the [PSR]'s conclusions regarding Mr. Gadson's role are incorrect or unproven; and on the other hand, if I find that the Government establishes that Mr. Gadson is Gio then the [PSR]'s conclusions regarding Mr. Gadson's role are correct.

*Tr. of Proceedings* at 9:1-7 (ECF No. 230). Judge Levy then carefully reviewed the evidence, listened to arguments of counsel, and reached his conclusion. *Id.* at 9:1-28:23. Judge Levy stated:

Based upon the evidence that I've been presented with and I have now considered, I find that there is substantial evidence that provides corroboration of the investigatory reports of the interviews conducted with a co-conspirator in this case, Ms. Novikov, and specifically her identification of the defendant, Mr. Gadson, as being Gio.

*Id.* at 26:21-27:1.

Judge Levy's conclusion, which is amply supported by the record, virtually compelled his other guideline finding regarding Mr. Gadson's lack of acceptance of responsibility because in denying that he was Gio, Mr. Gadson had failed to truthfully admit the conduct comprised in the offenses of conviction. *See* U.S.S.G. § 3E1.1, App. Note 1 ("In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to . . . truthfully admitting the conduct comprising the offense(s) of conviction").

Moreover, one of the factors for determining whether to accord a defendant acceptance of responsibility under U.S.S.G. § 3E1.1 is whether he has "voluntarily terminat[ed] or withdraw[n] from criminal conduct or associations." The PSR reads:

[T]he defendant failed to abide by all conditions of pretrial release. He was released on bail for the 2019 docket on September 25, 2019. The next month, he was engaged in bank fraud again. He also obtained a vehicle loan with fraudulent loan documents. He also obtained unemployment compensation during the COVID-19 pandemic by

understating his income. The location monitoring condition was removed from his pretrial conditions on March 27, 2020: one-and-one-half months later, he was traveling out of Massachusetts without the permission of his supervising officer. For the latter conduct, he was prosecuted for Criminal Contempt as reflected in the 2021 docket.

*PSR* ¶ 10; *see id.* ¶ 21 (describing Mr. Gadson's criminal contempt).

Indeed, Mr. Gadson committed a new crime while he was on pretrial release in the bank fraud and identity theft case. *See United State v. Gadson*, No. 2:21-cr-00163-JAW-1. On September 24, 2019, the Magistrate Judge imposed the following travel restriction on Mr. Gadson under additional condition 7(f):

> The defendant must: abide by the following restrictions on personal association, residence, or travel: Maintain residence as directed. Travel restrict[ed] to D/MA, but for D/ME and Florida for court purposes unless authorized by Pretrial Services.

2:19-cr-00122-JAW-2, *Order Setting Conditions of Release* at 2 (ECF No. 55). In the new criminal case for contempt of court, Mr. Gadson pleaded guilty to contempt of court, 2:21-cr-00163-JAW-1, *Min. Entry* (ECF No. 43), and admitted that without the express consent or knowledge of his supervising officer, in violation of Special Condition 7(f) of the Court's Order Setting Conditions of Release issued on September 24, 2019, he traveled outside Massachusetts, including trips to Las Vegas, Nevada, Miami, Florida, Los Angeles, California, Atlanta, Georgia, and San Juan, Puerto Rico. 2:21-cr-00163-JAW, *Prosecution Version* at 1-2 (ECF No. 38).

Mr. Gadson is flat out wrong in saying that his violation of the travel restriction in his conditions of release was not listed as relevant conduct. *See PSR* ¶ 21. Moreover, new criminal conduct while on pretrial release is relevant to sentencing and allows a sentencing court to deny acceptance of responsibility. *United*

*States v. deJesús*, 6 F.4th 141, 148-49 (1st Cir. 2021) ("[O]nce the district court supportably has found that the defendant has committed a new offense after being charged, it 'may . . . decline to award a reduction for acceptance of responsibility on that ground alone.'" (quoting *United States v. Carrington*, 96 F.3d 1, 9 (1st Cir. 1996)). Mr. Gadson's farfetched and unsupported contentions to the contrary are further evidence that he is not entitled to compassionate release because, even now, he does not appreciate the wrongfulness of his admitted criminal conduct.

Based on the foregoing, the Court DENIES with prejudice Defendant's frivolous Motion for Reduction in Sentence Pursuant to 18 U.S.C. §[ ]3582(c)(2), No. 2:19-cr-00122-JAW-2 (ECF No. 256); 2:21-cr-00163-JAW-1 (ECF No. 106).

## V.   THE DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

### A.   The Parties' Positions

#### 1.   The Defendant's Motion and Addendum

On August 28, 2024, Mr. Gadson wrote a letter to the Court, clarifying "[t]his is not another request for compassionate release this is an update on my well[-]being," but proceeding to describe multiple allegations of misconduct and abuse on the part of BOP officials and medical staff, a suicide attempt, periods of solitary confinement, and medical issues including an "untreated back injury." *Def.'s Third Compassionate Release Mot.* at 4.  Mr. Gadson alleges his back "started giving out d[ue] to [his] untreated back injury" resulting from the alleged February 1, 2024 assault.  *Id.*

Mr. Gadson's addendum, docketed as additional attachments and filed on July 1, 2024, provides additional information on the Defendant's back injury.  He states

his alleged assault by Officer Knoch on February 1, 2024 involved a dozen other officers, at least six of whom jumped on the Defendant's back. *Additional Attachs.* at 1. When he complained of his injury, he says medical staff "told [him] [he] was fine and to take [over-the-counter] medications, such as Ibuprofen, and to stretch." *Id.* at 2. "For 8-12 weeks after this incident, with weeks of suffering severe side and lower back pain, [he] had to go above and beyond to get the prison to x-ray [him]." *Id.* He reports that, when he was "finally x-rayed" on June 14, 2024, and, three days later, medical staff "revealed that [he] [has] major damage to [his] lower spine that is rapidly deteriorating due to months of walking around in pain, with no treatment." *Id.* Further, he says he has been diagnosed with Rapid Degenerate Space Narrowing on his L5-S1 spinal segments, and, when he requested medical records, was told there would be a two-month delay. *Id.* He says he will eventually need a wheelchair and, in his current condition, "can barely walk." *Id.*

The Court liberally construes this letter and addendum as a third compassionate release motion, the second motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A) and recounts its contents insofar as it states claims which may amount to a claim pursuant to U.S.S.G. § 1B1.13(b)(1). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2.    The Government's Response

50

The Government responded to Mr. Gadson's letter, including over thirty attachments of clinical records, communications, and BOP reports challenging the basis for Mr. Gadson's allegations, on October 4, 2024. *Gov't's Third Compassionate Release Opp'n.* Acknowledging that Mr. Gadson alleges "appalling physical and psychological abuse at FCI Oxford," the Government "respectfully submits that Gadson's shocking allegations are simply untrue and part of a continuing pattern of making false claims in order to attain the thing Gadson wants more than anything else – early release from custody." *Id.* at 1. Further, the Government says, a careful review of the clinical records from FCI Oxford show that the Defendant has been under "near constant supervision of the clinical staff at the facility, both on the medical side and by members of the Psychology Services staff . . .. and that at times Gadson has refused treatment that would alleviate the only real medical concern presented in his case (i.e., his chronic low back pain)." *Id.* at 1-2.

Examining the attached medical records, the Government says "it does appear Gadson has experienced some degenerative narrowing of the space between his L5 and S1 discs," but denies that this injury has any connection to the purposed assault on February 1, 2024. *Id.* at 4 n.5. The Government also notes that the Defendant was given over-the-counter medication and prescribed a Lidocaine patch to manage his back pain pending an MRI and referral to a neurosurgeon; however, he allegedly refused to use the patch as prescribed, and it was ultimately discontinued due to his non-use. *Id.* at 7 n.9 (citing *id.*, Attach. 4, *Ex. 1A; Clinical records (part 3)* at 109, 123, 137; *id.*, Attach. 7, *Ex. 1A; Clinical records (part 6)* at 249) (citations amended).

The Government says that although Mr. Gadson "continued to complain of back pain while he was on suicide watch [in July of 2024], Gadson also told the clinical staff on July 8, 2024, that he did not need the lidocaine patch that had been prescribed to manage his pain." *Id.* at 7 (citing *Clinical records (part 3)* at 131).

### 3.     The Defendant's Reply

Mr. Gadson's January 13, 2025 reply takes issue with the Government's opposition and says, "not only have I never been seen by a doctor for my still ongoing resp[ira]tory issue for over 2 years[,] now I have this physical medical condition with my back that will take long term medical care and phy[s]ical therapy to fix that I have not seen a real doctor for in almost 1 complete year." *Def.'s Third Compassionate Release Reply* at 2.  On his back injury, he adds that he was limited to bed rest as a result of this injury at some point during his period of incarceration.  *Id.* at 6.  He also says that, in a consultation with Psychology staff, "I did state in quote 'I have a right to deny medical and I will continue to deny medical I do not want Oxford staff touching me and doing fake exams and making fa[]lse records I need to see a real doctor' end quote."  *Id.*  The Defendant reasserts other arguments raised in other pending motions and addressed elsewhere in this order, and not relevant to the issue of his back injury; the Court does not restate them here.

### B.     Legal Discussion

Having already recounted the legal standard for a compassionate release motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court does not restate it here.  The issue before the Court in ruling on the Defendant's third compassionate

release motion is whether he has established his back injury amounts to an extraordinary and compelling reason for his early release pursuant to U.S.S.G. § 1B1.13(b)(1), which, as previously noted, provides various categories of medical circumstances that rise to the level of warranting judicial relief.  Subsection A contemplates a defendant "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)" and gives the examples of "metastatic solid-tumor cancer, ALS, end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13(b)(1)(A).  Subsection B describes a defendant who is (i) "suffering from a serious physical or medical condition," (ii) "suffering from a serious functional or cognitive impairment," or (iii) "experiencing deteriorating physical or mental health because of the aging process," and (iv) "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13(b)(1)(B).  Subsection C considers a defendant "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1)(C).  Finally, subsection D describes the circumstances under which:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious

disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

Subsection A is inapplicable because Mr. Gadson does not allege he is suffering from a terminal illness. Turning to Subsection B, assuming without deciding that the Defendant's back injury could constitute a "serious physical or medical condition," the Defendant does not argue or provide evidence which would allow the Court to conclude that this injury either substantially diminishes his ability to provide self-care within his current environment or that he is not expected to recover from this ailment. Subsection D is plainly not applicable; there is no allegation of infectious disease or an ongoing public health emergency. Subsection C appears the most apt category for his back injury. The Court thus reviews Mr. Gadson's motion pursuant to Subsection C.

The Court assumes without deciding for purposes of this motion that Mr. Gadson's back injury is a "medical condition that requires long-term or specialized medical care."[11] U.S.S.G. § 1B1.13(b)(1)(C). The Defendant tells the Court he has

---

[11]    The Court is not holding Mr. Gadson's back injury is a "medical condition that requires long-term or specialized medical care," U.S.S.G. § 1B1.13(b)(1)(C), and is aware that across numerous federal districts, courts denied requests for compassionate release based on back pain. *See, e.g.*, *United States v. Green*, No. 19 CR 496 (CM), 2023 U.S. Dist. LEXIS 92097, at *8 (S.D.N.Y. May 25, 2023) (denying motion for compassionate release based on movant's alleged "physical disabilities — thoracic herniated disc in my upper back and two bulging disc in my low[]er back, including lumbar segment 4 and 5 damages causing nerve impingement"); *United States v. Barnhart*, 704 F. Supp. 3d 679, 684 (W.D. Va. 2023) (denying motion for compassionate release where movant alleged "a herniated disc at his C5-C6 vertebrae that causes pain in his neck and arms"); *United States v. Bates*, No. ELH-09-0183, 2020 U.S. Dist. LEXIS 194285, at *8 (D. Md. Oct. 20, 2020) (denying motion for compassionate release where movant alleged "a 'slipped disc' that required surgery and, prior to his incarceration, he received a series of cortisone injections in his back").

been diagnosed with Rapid Degenerate Space Narrowing on his L5-S1 spinal segments causing him extensive pain. *Def.'s Third Compassionate Release Mot.* at 2. The Government admits his "chronic low back pain" is a "real medical concern," and concedes his medical records show "Gadson has experienced some degenerative narrowing of the space between his L5 and S1 discs." *Gov't Third Compassionate Release Opp'n* at 1-2.

However, to establish extraordinary and compelling reasons pursuant to U.S.S.G. § 1B1.13(b)(1)(C), a defendant also must establish that they are suffering from a medical condition that requires long-term or specialized care "*that is not being provided.*" U.S.S.G. § 1B1.13(b)(1)(C) (Court's emphasis). Mr. Gadson's third compassionate release motion fails because he has not shown BOP has denied him sufficient care to treat his back injury. On the contrary, the record presented supports the opposite conclusion that medical staff are offering Mr. Gadson treatment for his back injury, and the Defendant is, at times, declining this treatment. Mr. Gadson admits that on June 14, 2024, he received an x-ray and, on June 17, 2024, medical staff communicated he had "major damage" to his lower spine. *Def.'s Third Compassionate Release Mot.* at 2. Mr. Gadson's perceived delay in receiving his medical care is not an assertion that he did not receive adequate medical care. *See id.* Citing the Defendant's medical records, the Government also notes that Mr. Gadson was given over-the-counter medication and prescribed a Lidocaine patch to manage his back pain pending an MRI and a referral to a neurosurgeon; however, he allegedly refused to use the patch as prescribed, and it was ultimately discontinued

due to his non-use. *Gov't's Third Compassionate Release Opp'n* at 7 n.9 (citing *Clinical records (part 3)* at 109, 123, 137; *Clinical records (part 6)* at 249) (citations amended)). The Government says that, although Mr. Gadson "continued to complain of back pain while he was on suicide watch [in July of 2024], Gadson also told the clinical staff on July 8, 2024, that he did not need the lidocaine patch that had been prescribed to manage his pain." *Id.* at 7 (citing *Clinical records (part 3)* at 131).

The Court is sympathetic to this back injury and to Mr. Gadson's report that it causes him extensive pain and discomfort. However, he has not shown he is entitled to compassionate release pursuant to this back injury for the simple reason that a defendant denying himself medical care when offered does not amount to the BOP's failure or administrative inability to provide care. U.S.S.G. § 1B1.13(b)(1)(C). Mr. Gadson has also not alleged or shown that, without this care, he "is at risk of serious deterioration in health or death," as the Guidelines also require. *Id.*

## C.    Conclusion

In sum, the Court DISMISSES without prejudice the Defendant's Letter, No. 2:19-cr-00122-JAW-2 (ECF No. 268); 2:21-cr-00163-JAW-1 (ECF No. 120), which the Court construes as a compassionate release motion pursuant to 18 U.S.C. § 3582(c)(1)(A), because the Defendant has not shown an extraordinary and compelling reason for sentence reduction and, as previously discussed, the section 3553(a) factors do not support his early release.

## VI.    CONCLUSION

The Court DISMISSES without prejudice the Defendant's Motion for Discovery, Motion for Expedited Ruling, No. 2:19-cr-00122-JAW-2 (ECF No. 272); 2:21-cr-00163-JAW-1 (ECF No. 124).

The Court DISMISSES without prejudice Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. §[ ]3582(c)(1)(A), No. 2:19-cr-00122-JAW-2 (ECF No. 248); 2:21-cr-00163-JAW-1 (ECF No. 98).

The Court DENIES with prejudice Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. §[ ]3582(c)(2), No. 2:19-cr-00122-JAW-2 (ECF No. 256); 2:21-cr-00163-JAW-1 (ECF No. 106).

Finally, the Court DISMISSES without prejudice the Defendant's Letter, No. 2:19-cr-00122-JAW-2 (ECF No. 268); 2:21-cr-00163-JAW-1 (ECF No. 120), which the Court construes as a compassionate release motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2025