UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BERNARD GADSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | 2:19-cr-00122-JAW-2 |
| v. ) | 2:24-cv-00443-JAW |
| ) | 2:21-cr-00163-JAW |
| ) | 2:24-cv-00444-JAW |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

### AMENDED[1] RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION AND MOTION TO UPDATE PRESENTENCE REPORT CRIMINAL HISTORY CALCULATION

Following guilty pleas in two related cases, Petitioner was convicted of attempted bank fraud, aiding and abetting aggravated identity theft, and criminal contempt while on pretrial release; the Court sentenced Petitioner to a total of 110 months in prison. (Second Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 243, 2:21-cr-00163-JAW, ECF No. 95.)  Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentences.  (Motion, 2:19-cr-00122-JAW-2, ECF No. 278, 2:21-cr-00163-JAW, ECF No. 130.)  The Government requests dismissal of the motion.  (Response, 2:19-cr-00122-JAW-2, ECF No. 292, 2:21-cr-00163-JAW, ECF No. 144.)  Petitioner also asks the Court to modify his presentence investigation report (PSR) to reflect his contention that one of his

---

[1] After the Recommended Decision was issued, I noted that after Petitioner filed his motions, Petitioner was transferred to a federal correctional facility in Florida.  Because I have concluded that Petitioner's motion to update the presentence report criminal history calculation should be transferred to the district in which Petitioner is in custody, I issue this Amended Recommended Decision to account for Petitioner's current location.  I withdraw the original Recommended Decision.

prior convictions has been vacated.  (Motion to Update PSR, 2:19-cr-00122-JAW-2, ECF No. 294, 2:21-cr-00163-JAW, ECF No. 146.)  The Government opposes the motions.  (Response, 2:19-cr-00122-JAW-2, ECF No. 297, 2:21-cr-00163-JAW, ECF No. 148.)

Following a review of the record and after consideration of Petitioner's motions and the Government's responses, I recommend the Court dismiss Petitioner's § 2555 motions, construe the motions to update the PSR as § 2241 petitions, and transfer the § 2241 petitions to the Middle District of Florida.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2018, Defendant and two associates engaged in a scheme to defraud banks and credit unions throughout New England.  (Prosecution Version ¶ 1, 2:19-cr-00122-JAW-2, ECF No. 189.)  Petitioner would obtain the personal identifying information of individuals with good credit scores and then provide information and fake documents to the associates.  (*Id.*)  One of the associates would then apply for unsecured personal loans in the names of the victims, withdraw the balance of the loans in cash, and the three individuals would divide the money.  (*Id.*)

In January 2019, after taking out one such loan in Kittery, Maine, the two associates were arrested and interviewed.  (*Id.* ¶¶ 2–3.)  One of the associates told officers about the scheme and the participants.  (*Id.* ¶ 4.)  A search of the individual's phone revealed text messages among the three associates regarding the loan application, an email from Petitioner with a fake document for proof of income for one victim, and a text message with a fake lease in the name of another victim.  (*Id.* ¶ 5.)

A grand jury returned an indictment in June 2019. (Indictment, 2:19-cr-00122-JAW-2, ECF No. 3.) As later amended, Petitioner was charged with bank fraud in violation of 18 U.S.C. §§ 2 and 1344(2), two counts of aiding and abetting aggravated identity theft in violation of 18 U.S.C. §§ 2 and 1028A(1), attempted bank fraud in violation of 18 U.S.C. §§ 2 and 1344(2), and conspiracy to commit bank fraud and aggravated identity theft in violation of 18 U.S.C. §§ 371, 1344(2), and 1028A(1). (Superseding Indictment, 2:19-cr-00122-JAW-2, ECF No. 64.) Petitioner was arrested in August 2019 in Massachusetts, where other charges were pending; he was later released on pretrial supervision. (Initial Appearance, 2:19-cr-00122-JAW-2, ECF No. 18; Detention Hearing, 2:19-cr-00122-JAW-2, ECF No. 50.)

The Government subsequently learned that on many occasions between December 2019 and April 2021, Petitioner traveled well outside Massachusetts without permission in violation of his conditions of release. (Prosecution Version, 2:21-cr-00163-JAW, ECF No. 38.) In June 2021, the Government filed a motion to revoke Petitioner's bail. (Motion to Revoke Bail, 2:19-cr-00122-JAW-2, ECF No. 171.) The Government also charged Petitioner in a separate case with one count of criminal contempt in violation of 18 U.S.C. § 401(3). (Complaint, 2:21-cr-00163-JAW, ECF No. 3.)

In October 2021, Petitioner pled guilty to one count of attempted bank fraud and one count of aiding and abetting aggravated identity theft; he also waived indictment and pled guilty in the criminal contempt case. (Corrected Plea Agreement ¶¶ 1–2, 2:19-cr-00122-JAW-2, ECF No. 191, 2:21-cr-00163-JAW, ECF No. 41; Guilty Pleas, 2:19-cr-00122-JAW-2, ECF No. 192, 2:21-cr-00163-JAW, ECF No. 43.) The Government agreed

3

to dismiss the other charges and conditionally agreed to recommend a guideline reduction for acceptance of responsibility. (*Id.* ¶ 4.) Petitioner also waived his right to appeal from a sentence that did not exceed sixty months. (*Id.* ¶ 5.)

At sentencing in May 2022, Petitioner contested many issues, including whether he was the individual who the associate had identified as the leader of the scheme; the Court ruled against Petitioner and determined that Petitioner had not sufficiently accepted responsibility for purposes of the three-level guideline reduction, but the Count decided that Petitioner's partial acceptance as reflected by the decision to plead guilty justified a downward variance. (Sentencing Transcript at 50–51, 2:19-cr-00122-JAW-2, ECF No. 230, 2:21-cr-00163-JAW, ECF No. 80.) The Court calculated a total offense level of 27, a criminal history category of IV, and a corresponding guideline range of 100 to 125 months for the bank fraud and criminal contempt convictions. (*Id.* at 51.) The statutory minimum twenty-four-month sentence for aggravated identify theft to be served consecutively set the overall guideline range at 124 to 149 months in prison. (*Id.* at 51–52.) The Court sentenced Petitioner to concurrent terms of 80 months in prison for the attempted bank fraud and criminal contempt convictions and 24 months in prison to be served consecutively for the aggravated identify theft conviction, for a total term of 110 months in prison. (Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 223, 2:21-cr-00163-JAW, ECF No. 73.)

Petitioner appealed, contesting three issues: (1) the use of intended loss rather than actual loss in determining the offense level, as the guideline commentary instructed, (2) the

4

denial of the guideline reduction for acceptance of responsibility, and (3) the inclusion in the order of restitution of one auto loan that Petitioner had obtained in his own name but with false documents. In August 2023, the First Circuit rejected Petitioner's arguments on the first two issues, but because the Government conceded the restitution issue, the First Circuit remanded as to the amount of restitution without addressing the merits of that issue. *United States v. Gadson*, 77 F.4th 16, 22–23 (1st Cir. 2023).

On remand, the Court reduced the amount of restitution. (Second Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 243, 2:21-cr-00163-JAW, ECF No. 95.) Petitioner sought Supreme Court review; in February 2024, the Supreme Court denied the petition for a writ of certiorari. *Gadson v. United States*, 144 S. Ct. 823 (2024). Petitioner later filed the § 2255 motions and the motions to update the PSR.

## DISCUSSION

**A.     2255 Motions**

    **1.     Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*,

429 U.S. 97, 106 (1976)).  The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002).  "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence."  *Berthoff*, 308 F.3d at 127–28.  Procedural default is an affirmative defense.  *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).  The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*."  *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382–83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167–68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  The petitioner

6

must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003). A hearing is unnecessary "when a § 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Id.* (quotation marks omitted).

7

Summary dismissal of a motion is permitted when the allegations are "vague, conclusory, or palpably incredible," even "if the record does not conclusively and expressly belie [the] claim." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *David*, 134 F.3d at 478 (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### 2. Pre-Plea Predictions about Trial and Sentencing

Petitioner argues that his attorney provided ineffective assistance of counsel by misleading him regarding his chances of acquittal at trial and the likely sentence if he pled guilty. (Motion at 5.) Petitioner alleges that defense counsel told him that his chance of acquittal was low in part because he is a black man in Maine and the primary witness against him was a white woman. (*Id.*) Counsel acknowledges that he advised Petitioner that he was not likely to prevail at trial and that Petitioner's position at sentencing would be more favorable after a guilty plea. (Rioux Declaration at 2, 2:19-cr-00122-JAW-2, ECF No. 292-1, 2:21-cr-00163-JAW, ECF No. 144-1.) According to counsel, while Petitioner was concerned about the likely racial composition of the jury, counsel attempted to reassure him citing counsel's prior success defending black defendants in Maine, but counsel expressed concern about the evidence the Government would present against Petitioner. (*Id.*)

Petitioner also alleges that counsel told him that a guilty finding after trial would likely yield a sentence of around seven years, but if he pled guilty, the sentence would be approximately forty months and no more than the sixty-month appeal waiver threshold.

8

(Motion at 5.) Counsel denies that he promised a forty or sixty-month sentence and asserts that his estimate of seven years was for the original fraud case before the addition of the bail revocation and criminal contempt charges. (Rioux Declaration at 2.)

Petitioner also asserts that counsel told him that if he pled guilty and the conspiracy charge was dismissed, the other uncharged conduct would not be considered for purposes of sentencing. (Motion at 5, 8.) Counsel asserts that he discussed with Petitioner that dismissal of the conspiracy count would be beneficial at sentencing, but he did not guarantee that Petitioner's other actions would not be considered relevant conduct at sentencing. (Rioux Declaration at 2.)

Petitioner's unsupported allegations are insufficient to establish deficient performance or to necessitate an evidentiary hearing to resolve a genuine issue of credibility. Notably, Petitioner fails to provide any authority that would suggest it is improper for an attorney to discuss with a client the issues, including race, that might impact a jury's deliberations.[2] Further, "an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1994).

---

[2] Petitioner contends that *Buck v. Davis*, 580 U.S. 100 (2017), established that it is impermissible and coercive for counsel to assert that a guilty verdict is likely because of the race of the jurors. (Reply at 1, 2:19-cr-00122-JAW-2, ECF No. 301, 2:21-cr-00163-JAW, ECF No. 152; Reply to Declaration at 2, 2:19-cr-00122-JAW-2, ECF No. 301-1, 2:21-cr-00163-JAW, ECF No. 152-1.) The Supreme Court found deficient performance and prejudice when defense counsel introduced expert evidence in front of the jury linking a defendant's race with increased probability of future criminality. *Buck*, 580 U.S. at 119–22. The case does not support Petitioner's argument because it did not address attorney-client communications regarding an assessment of trial-related issues.

Even assuming that Petitioner's account of his communications with counsel is accurate, Petitioner's claim also fails because the record does not support a finding of prejudice. To establish prejudice in the context of a claim of ineffective assistance leading to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), or would have accepted another available and more favorable plea offer, *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

Because Petitioner does not allege that he rejected a more favorable plea offer, the question is whether the record would support a finding that Petitioner would have opted for trial but for counsel's alleged statements. The Supreme Court has acknowledged that defendants may reasonably risk trial and forego the guideline reduction for acceptance of responsibility in certain circumstances, but it has also cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

The record in this case is devoid of any contemporaneous evidence suggesting that Petitioner would have insisted on going to trial but for counsel's statements. Petitioner has presented no evidence to undermine any of the evidence of guilt, and the evidence of guilt was substantial. There are also no apparent special implications of conviction, such as possible deportation, that might have caused Petitioner to proceed to trial rather than plead guilty. *See id.* Petitioner's ability to establish prejudice is also compromised by the explicit warnings Petitioner received that the appeal waiver was not an estimate or a cap on the

sentence. (Corrected Plea Agreement at 4.) Because the record does not contain any evidence that would support a finding of prejudice, Petitioner's ineffective assistance claims fail.

### 3. Sentencing Preparation and Evidence

Petitioner argues that he was deprived of the effective assistance of counsel at sentencing because he did not receive the guideline reduction for acceptance of responsibility and because counsel declined to introduce a letter from his codefendant containing an assertion that Petitioner was not the individual named Gio who led the scheme. (Motion at 6, 9.) Defense counsel reported that he decided not to introduce the letter because it was unlikely to convince the judge that Petitioner was not Gio given that at his plea hearing, Defendant acknowledged the accuracy of the prosecution version, which asserted that Petitioner was Gio. (Rioux Declaration at 4-5.) Counsel also asserted that he concluded the letter could have been counterproductive as the Government could argue that Petitioner had pressured his cousin (the codefendant) to provide false evidence to help Petitioner at sentencing. (*Id.* at 5.)

Petitioner also argues that his attorney arrived at the sentencing hearing with a blank notepad and failed to prepare to advocate for him. (Motion at 6.) Counsel asserted that he likely did bring a blank notepad because he ordinarily takes notes during the Government's presentation, but he also brought other materials, including exhibits that he submitted to the Court. (Rioux Declaration at 5.)

None of Petitioner's arguments establishes deficient performance or prejudice from counsel's decisions at sentencing. Because Petitioner offers no convincing response to

11

counsel's countervailing concerns about the letter, the decision not to introduce the letter was a reasonable strategic decision. A review of the record—including the objections to the PSR, the sentencing memoranda, and the sentencing transcript—conclusively refutes any allegation that counsel was unprepared and failed to present argument in Petitioner's defense. To the contrary, counsel argued effectively for acceptance of responsibility and the Court varied downward for his partial acceptance of responsibility despite Petitioner's decision to dispute various issues regarding his role and identity. Because Petitioner does not identify the other material issues, arguments, or evidence that would have been discovered or raised at sentencing if counsel made additional preparations, the claim is too speculative to support postconviction relief. *See Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010) ("Where, as here, the result of counsel's alleged failure to investigate is wholly speculative," an ineffective assistance claim fails).

### 4.  **Judicial Bias**

Petitioner argues that trial and appellate counsel provided ineffective assistance by failing to object or seek recusal when the judge allegedly exhibited bias against Petitioner at sentencing. (Motion at 10.)[3] The statements that Petitioner contends reflect bias are simply insufficient to establish judicial bias. *See Liteky v. United States*, 510 U.S. 540, 556 (1994) (noting that "judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses" during

---

[3] Petitioner initially framed the claim as one of judicial error, but after the Government argued correctly that the claim was procedurally defaulted for failing to raise it at sentencing or on appeal, Petitioner invoked ineffective assistance, either as a clarification regarding the nature of his claim or as cause to excuse the procedural default. (Reply to Declaration at 5.)

12

judicial proceedings are not sufficient to establish judicial bias unless they "relied upon knowledge acquired outside such proceedings" or "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible"). At most, the statements that Petitioner cites reflect a misunderstanding regarding certain facts. The statements do not suggest bias. Petitioner also has not explained (and it is not apparent) how the statements were material or significant enough to warrant an objection, additional counterarguments, or a motion for recusal.[4]

In short, Petitioner has not established deficient performance or prejudice from counsel's decisions because the underlying assertion of judicial bias lacks merit.

## 5. Actual vs. Intended Loss

Petitioner argues that the Court erred by applying a twelve-point increase to his base offense level for a total intended loss over $250,000. Petitioner contends that the amount would have been lower and thus the base offense level would have been four points lower if the approximate $107,000 auto loan that Petitioner obtained in his own name was not considered. (Motion at 14.) According to Petitioner, the Government conceded on direct

---

[4] For example, Petitioner originally objected to the PSR's references to certain fraudulent transactions in Minnesota while he was on pretrial release, but he withdrew the objection when the government was prepared to submit evidence on the issue. (Sentencing Transcript at 34–37.) When explaining why it was appropriate for Petitioner to receive a longer sentence than the codefendant, the Court noted that Petitioner (but not the codefendant) had "pled guilty also now to criminal contempt for his conduct in Minnesota, having been released on bail for this type of fraudulent conduct and then repeating it . . ." (*Id.* at 56.) Petitioner does not dispute that he (but not the codefendant) pled guilty to criminal contempt and chose not to contest the evidence that he had continued to engage in similar fraudulent conduct. Rather, Petitioner faults the Court for what might be construed as a conflation of Petitioner's decision not to contest the evidence of the fraudulent transactions with an admission of guilt. Counsel's decision not to object was not unreasonable given that there could be no dispute that the Court's substantive point was sound: Petitioner's decisions to travel and engage in similar conduct while on pretrial release distinguished his situation from that of his codefendant.

13

appeal that the auto loan should not have been part of the restitution order, but his guideline range was still improperly increased because of that loan. (*Id.*)

Petitioner procedurally defaulted the claim by failing to raise it on direct appeal. Even if Petitioner could overcome the default through an assertion of ineffective assistance of counsel, that assertion would fail because the underlying argument lacks merit. While the auto loan originally impacted the restitution order, the auto loan was not material to the guideline sentencing range because the Probation Office and the Court only included a much smaller portion–approximately $7,600–as part of their calculation of the intended loss. (PSR at 11.) Because the total intended loss was far greater than $257,600, the twelve-level increase to the offense level would have been the same even without considering the auto loan. *See Gadson*, 77 F.4th at 22 n.3 (noting that Petitioner conceded the auto loan was immaterial to the offense level increase unless he could win the argument regarding actual vs. intended loss). Accordingly, the claim fails.

**B.    Motions to Update the PSR**

Petitioner asks the Court to update the PSR to remove references to a prior conviction that he alleges was vacated after judgment. (Motions to Update PSR at 1.) Petitioner maintains that if recalculated today, his criminal history score would be two points lower, and his criminal history category would be III rather than IV. (*Id.*) Petitioner asserts that the change is necessary because it impacts his recidivism score and the calculation of time credits, but the Bureau of Prisons will not grant his request without court involvement. (*Id.*)

"Once a district court imposes a term of imprisonment, it may modify that term only to the extent authorized by 18 U.S.C. § 3582(c)." *United States v. Griffin*, 524 F.3d 71, 83 (1st Cir. 2008). Under § 3582(c), the sentencing court may: (1) correct an arithmetical, technical, or other clear error within 14 days after sentencing, *id.* § 3582(c)(1)(B), Fed. R. Crim. P. 35(a); (2) reduce a sentence upon the government's motion within one year of sentencing if the defendant provided substantial assistance investigating or prosecuting another person, *id.* § 3582(c)(1)(B), Fed. R. Crim. P. 35(b); (3) modify a sentence that was based on a guideline range which the Sentencing Commission subsequently lowered, *id.* § 3582(c)(2); and (4) reduce a sentence for certain defendants over the age of seventy who have served more than thirty years in prison or for other defendants based on extraordinary and compelling reasons, *id.* § 3582(c)(1)(A). In addition, Congress has the power to authorize courts to modify sentences by enacting other statutes. *See id.* § 3582(c)(1)(B) (providing for sentence modifications "to the extent otherwise expressly permitted by statute"). Beyond that "handful of narrowly circumscribed exceptions," the sentencing court "has no jurisdiction to vacate, alter, or revise a sentence previously imposed." *United States v. Mercado-Flores*, 872 F.3d 25, 28 (1st Cir. 2017). Therefore, in the absence of some other new sentencing proceeding, "this Court does not have the authority to amend the presentence report to remove information after sentencing." *United States v. Sawyer*, No. CR 15-897-TUC-CKJ, 2025 WL 2645695, at *1 (D. Ariz. Sept. 15, 2025) (quotation marks and modifications omitted).

After a court imposes a sentence, the Bureau of Prisons (BOP), rather than the sentencing court, is responsible for determinations like the calculation of the sentence and

15

time credits. *See* 18 U.S.C. § 3624(a)-(b); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) ("Courts have original jurisdiction over imposition of a sentence. The Bureau of Prisons is, however, responsible for computing that sentence and applying appropriate good time credit."). When a prisoner seeks to challenge or enforce the rules and regulations governing the implementation or execution of the sentence rather than the legality of the conviction or sentence, the prisoner must exhaust the internal BOP remedies and then file a petition pursuant to 28 U.S.C. § 2241 in the court with jurisdiction over the place of confinement rather than the sentencing court. *McKinney v. United States*, No. 1:18-CR-00084-JAW-3, 2022 WL 1997242, at *3 (D. Me. June 6, 2022); s*ee also*, *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement"); *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015) (noting that § 2241 petitions are the traditional method for challenging BOP decisions regarding prison placement and time credits). Because Petitioner alleges the BOP is relying on incorrect information in calculating his recidivism score and credits and has failed to correct the error, and because Petitioner does not challenge the legality of the sentence when it was imposed, the motion is in substance a § 2241 habeas corpus motion, which motion can only be heard in the district of confinement.

When a petitioner seeks habeas relief from the incorrect federal district court, the court must dismiss the petition or, if it is in the interest of justice, transfer the case to any district or division where it could have been filed properly. 28 U.S.C. §§ 1406(a), 1404(a),

1631; *Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *11 (D. Mass. Apr. 4, 2025). Petitioner argued that the sentencing court could resolve the issue, but he argued in the alternative that that the motion should be transferred to the district of confinement. Absent unusual circumstances, other courts in this circuit have generally transferred rather than dismissed such petitions. *See, e.g.*, *Tham v. Adducci*, 319 F. Supp. 3d 574, 578 (D. Mass. 2018) ("there is a rebuttable presumption in favor of transferring a case instead of dismissing it") (citing *Britell v. United States*, 318 F.3d 70, 73–74 (1st Cir. 2003)). Considering the law's preference for deciding cases on the merits, and because there is an identifiable court that likely would have jurisdiction to consider a § 2241 petition, the interests of justice would support a transfer to the United States District Court for the Middle District of Florida.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motions for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2). I also recommend the Court construe the motions to update the PSR as § 2241 petitions and transfer the petitions to the Middle District of Florida.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of January, 2026.