UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BERNARD GADSON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | 2:19-cr-00122-JAW-2 |
| v. | ) | 2:24-cv-00443-JAW |
| | ) | 2:21-cr-00163-JAW |
| | ) | 2:24-cv-00444-JAW |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION
AND MOTION TO UPDATE PRESENTENCE REPORT
CRIMINAL HISTORY CALCULATION**

Following guilty pleas in two related cases, Petitioner was convicted of attempted bank fraud, aiding and abetting aggravated identity theft, and criminal contempt while on pretrial release; the Court sentenced Petitioner to a total of 110 months in prison.  (Second Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 243, 2:21-cr-00163-JAW, ECF No. 95.)  Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentences.  (Motion, 2:19-cr-00122-JAW-2, ECF No. 278, 2:21-cr-00163-JAW, ECF No. 130.)  The Government requests dismissal of the motion.  (Response, 2:19-cr-00122-JAW-2, ECF No. 292, 2:21-cr-00163-JAW, ECF No. 144.)  Petitioner also asked the Court to modify his presentence investigation report (PSR) to reflect his contention that one of his prior convictions has been vacated.  (Motion to Update PSR, 2:19-cr-00122-JAW-2, ECF No. 294, 2:21-cr-00163-JAW, ECF No. 146.)  The Government also opposes that motion. (Response, 2:19-cr-00122-JAW-2, ECF No. 297, 2:21-cr-00163-JAW, ECF No. 148.)

Following a review of the record and after consideration of Petitioner's motions and the Government's responses, I recommend that the Court grant Petitioner's motion for habeas relief under 28 U.S.C. § 2255 as to the claim for resentencing following a vacated prior conviction and otherwise deny Petitioner's motion for postconviction relief. I also recommend that the Court dismiss the motion to update the presentence report.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2018, Defendant and two associates engaged in a scheme to defraud banks and credit unions throughout New England. (Prosecution Version ¶ 1, 2:19-cr-00122-JAW-2, ECF No. 189.) Petitioner would obtain the personal identifying information of individuals with good credit scores and then provide information and fake documents to the associates. (*Id.*) One of the associates would then apply for unsecured personal loans in the names of the victims, withdraw the balance of the loans in cash, and the three individuals would divide the money. (*Id.*)

In January 2019, after taking out one such loan in Kittery, Maine, the two associates were arrested and interviewed. (*Id.* ¶¶ 2–3.) One of the associates told officers about the scheme and the participants. (*Id.* ¶ 4.) A search of the individual's phone revealed text messages among the three associates regarding the loan application, an email from Petitioner with a fake document for proof of income for one victim, and a text message with a fake lease in the name of another victim. (*Id.* ¶ 5.)

A grand jury returned an indictment in June 2019. (Indictment, 2:19-cr-00122-JAW-2, ECF No. 3.) As later amended, Petitioner was charged with bank fraud in violation of 18 U.S.C. §§ 2 and 1344(2), two counts of aiding and abetting aggravated identity theft

2

in violation of 18 U.S.C. §§ 2 and 1028A(1), attempted bank fraud in violation of 18 U.S.C. §§ 2 and 1344(2), and conspiracy to commit bank fraud and aggravated identity theft in violation of 18 U.S.C. §§ 371, 1344(2), and 1028A(1).  (Superseding Indictment, 2:19-cr-00122-JAW-2, ECF No. 64.)  Petitioner was arrested in August 2019 in Massachusetts, where other charges were pending; he was later released on pretrial supervision.  (Initial Appearance, 2:19-cr-00122-JAW-2, ECF No. 18; Detention Hearing, 2:19-cr-00122-JAW-2, ECF No. 50.)

The Government subsequently learned that on many occasions between December 2019 and April 2021, Petitioner traveled well outside Massachusetts without permission in violation of his conditions of release.  (Prosecution Version, 2:21-cr-00163-JAW, ECF No. 38.)  In June 2021, the Government filed a motion to revoke Petitioner's bail.  (Motion to Revoke Bail, 2:19-cr-00122-JAW-2, ECF No. 171.) The Government also charged Petitioner in a separate case with one count of criminal contempt in violation of 18 U.S.C. § 401(3).  (Complaint, 2:21-cr-00163-JAW, ECF No. 3.)

In October 2021, Petitioner pled guilty to one count of attempted bank fraud and one count of aiding and abetting aggravated identity theft; he also waived indictment and pled guilty in the criminal contempt case.  (Corrected Plea Agreement ¶¶ 1–2, 2:19-cr-00122-JAW-2, ECF No. 191, 2:21-cr-00163-JAW, ECF No. 41; Guilty Pleas, 2:19-cr-00122-JAW-2, ECF No. 192, 2:21-cr-00163-JAW, ECF No. 43.)  The Government agreed to dismiss the other charges and conditionally agreed to recommend a guideline reduction for acceptance of responsibility.  (*Id.* ¶ 4.)  Petitioner also waived his right to appeal from a sentence that did not exceed sixty months.  (*Id.* ¶ 5.)

3

At sentencing in May 2022, Petitioner contested many issues, including whether he was the individual whom the associate had identified as the leader of the scheme; the Court ruled against Petitioner and determined that Petitioner had not sufficiently accepted responsibility for purposes of the three-level guideline reduction, but the Count decided that Petitioner's partial acceptance as reflected by the decision to plead guilty justified a downward variance.  (Sentencing Transcript at 50–51, 2:19-cr-00122-JAW-2, ECF No. 230, 2:21-cr-00163-JAW, ECF No. 80.)  The Court calculated a total offense level of 27, a criminal history category of IV, and a corresponding guideline range of 100 to 125 months for the bank fraud and criminal contempt convictions.  (*Id.* at 51.)  The statutory minimum twenty-four-month sentence for aggravated identify theft to be served consecutively set the overall guideline range at 124 to 149 months in prison.  (*Id.* at 51–52.)  The Court sentenced Petitioner to concurrent terms of 80 months in prison for the attempted bank fraud and criminal contempt convictions and 24 months in prison to be served consecutively for the aggravated identify theft conviction, for a total term of 110 months in prison.  (Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 223, 2:21-cr-00163-JAW, ECF No. 73.)

Petitioner appealed, contesting three issues: (1) the use of intended loss rather than actual loss in determining the offense level, as the guideline commentary instructed, (2) the denial of the guideline reduction for acceptance of responsibility, and (3) the inclusion in the order of restitution of one auto loan that Petitioner had obtained in his own name but with false documents.  In August 2023, the First Circuit rejected Petitioner's arguments on the first two issues, but because the Government conceded the restitution issue, the First

4

Circuit remanded as to the amount of restitution without addressing the merits of that issue. *United States v. Gadson*, 77 F.4th 16, 22–23 (1st Cir. 2023).

On remand, the Court reduced the amount of restitution. (Second Amended Judgment, 2:19-cr-00122-JAW-2, ECF No. 243, 2:21-cr-00163-JAW, ECF No. 95.) Petitioner sought Supreme Court review; in February 2024, the Supreme Court denied the petition for a writ of certiorari. *Gadson v. United States*, 144 S. Ct. 823 (2024). Petitioner later filed the § 2255 motion, the motion to update the PSR, and several supplements and clarifications to his motions.

## DISCUSSION

### A.    Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge

5

who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382–83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167–68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel

6

need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003). A hearing is unnecessary "when a § 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Id.* (quotation marks omitted).

Summary dismissal of a motion is permitted when the allegations are "vague, conclusory, or palpably incredible," even "if the record does not conclusively and expressly belie [the] claim." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to

7

permitting discovery or a hearing. *David*, 134 F.3d at 478 (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.      Pre-Plea Predictions about Trial and Sentencing**

Petitioner argues that his attorney provided ineffective assistance of counsel by misleading him regarding his chances of acquittal at trial and the likely sentence if he pled guilty. (Motion at 5.) Petitioner alleges that defense counsel told him that his chance of acquittal was low in part because he is a black man in Maine and the primary witness against him was a white woman. (*Id.*) Counsel acknowledges that he advised Petitioner that he was not likely to prevail at trial and that Petitioner's position at sentencing would be more favorable after a guilty plea. (Rioux Declaration at 2, 2:19-cr-00122-JAW-2, ECF No. 292-1, 2:21-cr-00163-JAW, ECF No. 144-1.) According to counsel, while Petitioner was concerned about the likely racial composition of the jury, counsel attempted to reassure him citing counsel's prior success defending black defendants in Maine, but counsel expressed concern about the evidence the Government would present against Petitioner. (*Id.*)

Petitioner also alleges that counsel told him that a guilty finding after trial would likely yield a sentence of around seven years, but if he pled guilty, the sentence would be approximately forty months and no more than the sixty-month appeal waiver threshold. (Motion at 5.) Counsel denies that he promised a forty or sixty-month sentence and asserts that his estimate of seven years was for the original fraud case before the addition of the bail revocation and criminal contempt charges. (Rioux Declaration at 2.)

8

Petitioner also asserts that counsel told him that if he pled guilty and the conspiracy charge was dismissed, the other uncharged conduct would not be considered for purposes of sentencing.  (Motion at 5, 8.)  Counsel asserts that he discussed with Petitioner that dismissal of the conspiracy count would be beneficial at sentencing, but he did not guarantee that Petitioner's other actions would not be considered relevant conduct at sentencing.  (Rioux Declaration at 2.)

Petitioner's unsupported allegations are insufficient to establish deficient performance or to necessitate an evidentiary hearing to resolve a genuine issue of credibility.  Notably, Petitioner fails to provide any authority that would suggest it is improper for an attorney to discuss with a client the issues, including race, that might impact a jury's deliberations.[1]  Further, "an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1994).

Even assuming that Petitioner's account of his communications with counsel is accurate, Petitioner's claim also fails because the record does not support a finding of prejudice.  To establish prejudice in the context of a claim of ineffective assistance leading to a guilty plea, "the defendant must show that there is a reasonable probability that, but

---

[1] Petitioner contends that *Buck v. Davis*, 580 U.S. 100 (2017), established that it is impermissible and coercive for counsel to assert that a guilty verdict is likely because of the race of the jurors. (Reply at 1, 2:19-cr-00122-JAW-2, ECF No. 301, 2:21-cr-00163-JAW, ECF No. 152; Reply to Declaration at 2, 2:19-cr-00122-JAW-2, ECF No. 301-1, 2:21-cr-00163-JAW, ECF No. 152-1.)  The Supreme Court found deficient performance and prejudice when defense counsel introduced expert evidence in front of the jury linking a defendant's race with increased probability of future criminality. *Buck*, 580 U.S. at 119–22. The case does not support Petitioner's argument because it did not address attorney-client communications regarding an assessment of trial-related issues.

for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), or would have accepted another available and more favorable plea offer, *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

Because Petitioner does not allege that he rejected a more favorable plea offer, the question is whether the record would support a finding that Petitioner would have opted for trial but for counsel's alleged statements. The Supreme Court has acknowledged that defendants may reasonably risk trial and forego the guideline reduction for acceptance of responsibility in certain circumstances, but it has also cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

The record in this case is devoid of any contemporaneous evidence suggesting that Petitioner would have insisted on going to trial but for counsel's statements. Petitioner has presented no evidence to undermine any of the evidence of guilt, and the evidence of guilt was substantial. There are also no apparent special implications of conviction, such as possible deportation, that might have caused Petitioner to proceed to trial rather than plead guilty. *See id.* Petitioner's ability to establish prejudice is also compromised by the explicit warnings Petitioner received that the appeal waiver was not an estimate or a cap on the sentence. (Corrected Plea Agreement at 4.) Because the record does not contain any evidence that would support a finding of prejudice, Petitioner's ineffective assistance claims fail.

10

**C.    Sentencing Preparation and Evidence**

Petitioner contends that he was deprived of the effective assistance of counsel at sentencing because he did not receive the guideline reduction for acceptance of responsibility and because counsel declined to introduce a letter from his codefendant containing an assertion that Petitioner was not the individual named Gio who led the scheme. (Motion at 6, 9.) Defense counsel reported that he decided not to introduce the letter because it was unlikely to convince the judge that Petitioner was not Gio given that at his plea hearing, Defendant acknowledged the accuracy of the prosecution version, which asserted that Petitioner was Gio. (Rioux Declaration at 4-5.) Counsel also asserted that he concluded the letter could have been counterproductive as the Government could argue that Petitioner had pressured his cousin (the codefendant) to provide false evidence to help Petitioner at sentencing. (*Id.* at 5.)

Petitioner also argues that his attorney arrived at the sentencing hearing with a blank notepad and failed to prepare to advocate for him. (Motion at 6.) Counsel asserted that he likely did bring a blank notepad because he ordinarily takes notes during the Government's presentation, but he also brought other materials, including exhibits that he submitted to the Court. (Rioux Declaration at 5.)

None of Petitioner's arguments establishes deficient performance or prejudice from counsel's decisions at sentencing. Because Petitioner offers no convincing response to counsel's countervailing concerns about the letter, the decision not to introduce the letter was a reasonable strategic decision. A review of the record—including the objections to the PSR, the sentencing memoranda, and the sentencing transcript—conclusively refutes

any allegation that counsel was unprepared and failed to present argument in Petitioner's defense. To the contrary, counsel argued effectively for acceptance of responsibility and the Court varied downward for his partial acceptance of responsibility despite Petitioner's decision to dispute various issues regarding his role and identity. Because Petitioner does not identify the other material issues, arguments, or evidence that would have been discovered or raised at sentencing if counsel made additional preparations, the claim is too speculative to support postconviction relief. *See Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010) ("Where, as here, the result of counsel's alleged failure to investigate is wholly speculative," an ineffective assistance claim fails).

## D.    Judicial Bias

Petitioner asserts that trial and appellate counsel provided ineffective assistance by failing to object or seek recusal when the judge allegedly exhibited bias against Petitioner at sentencing. (Motion at 10.)[2] The statements that Petitioner contends reflect bias are simply insufficient to establish judicial bias. *See Liteky v. United States*, 510 U.S. 540, 556 (1994) (noting that "judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses" during judicial proceedings are not sufficient to establish judicial bias unless they "relied upon knowledge acquired outside such proceedings" or "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible"). At most, the statements that

---

[2] Petitioner initially framed the claim as one of judicial error, but after the Government argued correctly that the claim was procedurally defaulted for failing to raise it at sentencing or on appeal, Petitioner invoked ineffective assistance, either as a clarification regarding the nature of his claim or as cause to excuse the procedural default. (Reply to Declaration at 5.)

Petitioner cites reflect a misunderstanding regarding certain facts. The statements do not suggest bias. Petitioner also has not explained (and it is not apparent) how the statements were material or significant enough to warrant an objection, additional counterarguments, or a motion for recusal.[3]

In short, Petitioner has not established deficient performance or prejudice from counsel's decisions because the underlying assertion of judicial bias lacks merit.

### E.      Actual vs. Intended Loss

Petitioner argues that the Court erred by applying a twelve-point increase to his base offense level for a total intended loss over $250,000. Petitioner contends that the amount would have been lower and thus the base offense level would have been four points lower if the approximate $107,000 auto loan that Petitioner obtained in his own name was not considered. (Motion at 14.) According to Petitioner, the Government conceded on direct appeal that the auto loan should not have been part of the restitution order, but his guideline range was still improperly increased because of that loan. (*Id.*)

---

[3] For example, Petitioner originally objected to the PSR's references to certain fraudulent transactions in Minnesota while he was on pretrial release, but he withdrew the objection when the government was prepared to submit evidence on the issue. (Sentencing Transcript at 34–37.) When explaining why it was appropriate for Petitioner to receive a longer sentence than the codefendant, the Court noted that Petitioner (but not the codefendant) had "pled guilty also now to criminal contempt for his conduct in Minnesota, having been released on bail for this type of fraudulent conduct and then repeating it . . ." (*Id.* at 56.) Petitioner does not dispute that he (but not the codefendant) pled guilty to criminal contempt and chose not to contest the evidence that he had continued to engage in similar fraudulent conduct. Rather, Petitioner faults the Court for what might be construed as a conflation of Petitioner's decision not to contest the evidence of the fraudulent transactions with an admission of guilt. Counsel's decision not to object was not unreasonable given that there could be no dispute that the Court's substantive point was sound: Petitioner's decisions to travel and engage in similar conduct while on pretrial release distinguished his situation from that of his codefendant.

Petitioner procedurally defaulted the claim by failing to raise it on direct appeal. Even if Petitioner could overcome the default through an assertion of ineffective assistance of counsel, that assertion would fail because the underlying argument lacks merit. While the auto loan originally impacted the restitution order, the auto loan was not material to the guideline sentencing range because the Probation Office and the Court only included a much smaller portion–approximately $7,600–as part of their calculation of the intended loss. (PSR at 11.) Because the total intended loss was far greater than $257,600, the twelve-level increase to the offense level would have been the same even without considering the auto loan. *See Gadson*, 77 F.4th at 22 n.3 (noting that Petitioner conceded the auto loan was immaterial to the offense level increase unless he could win the argument regarding actual vs. intended loss). Accordingly, the claim fails.

F.      **Massachusetts Conviction for Breaking and Entering**

At sentencing, Petitioner received two points toward his criminal history score for a 2014 conviction in Massachusetts for breaking and entering. Petitioner had a criminal history category of IV, which yielded an overall guideline range of 124 to 149 months in prison. Without the two points from the conviction, Petitioner would have had a criminal history category of III, which would have produced an overall guideline range of 111 to 132 months in prison. In several filings after his initial § 2255 motion, Petitioner argues that: (1) his attorney provided ineffective assistance at sentencing by failing to maintain his objection to the two criminal history points because it was duplicative and erroneous under the relevant guideline provisions, and (2) he is entitled to be resentenced because the

14

prior conviction was subsequently vacated.  The Government argues the claims are barred by the statute of limitations.

Title 28 U.S.C. § 2255(f) provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

When there are multiple claims at issue, "the period of limitation in 28 U.S.C. § 2255(f) should be applied on a claim-by-claim basis." *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014).

The Court entered an amended judgment on remand in September 2023 after the First Circuit affirmed the district court's judgment in part and reversed in part in August 2023.  Petitioner's judgment became final on February 20, 2024, when the Supreme Court denied his request for further appellate review.  *See In re Smith*, 436 F.3d 9, 10 (1st Cir. 2006) (when a defendant unsuccessfully seeks a writ of certiorari, "every circuit that has addressed the issue has concluded that a conviction becomes final—and the one-year period therefore starts to run—when a petition for certiorari is denied").  The limitation

15

period for filing a § 2255 motion to challenge the judgment expired one year later, on February 20, 2025.  *See Rogers v. United States*, 180 F.3d 349, 355 n.13 (1st Cir. 1999) ("When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period") (quotation omitted).

Petitioner's original § 2255 motion was filed timely because it was dated and received in December 2024, approximately two months before the limitations period expired.  The original motion, however, contained no reference to the prior conviction issues.  There was no mention of the alleged guideline error or the state court vacatur.  The first time Petitioner arguably raised those issues was in his motion to update the presentence report, which was dated June 9, 2025, and received on June 30, 2025, nearly four months after the limitations period under subsection (f)(1) expired.

Petitioner invokes the rules for relating back amendments to a prior pleading. Petitioner's alleged double counting guideline error claim would only be timely if it relates back, pursuant to Fed. R. Civ. P. 15(c), to the issues raised in the original section 2255 motion that Petitioner filed before the limitations period expired.[4]  *See Turner v. United States*, 699 F.3d 578, 585 (1st Cir. 2012) (noting "[t]he relation back provision in habeas petitions is strictly construed," and "amended habeas corpus claims generally must

---

[4] Fed. R. Civ. P. 15(c) states in relevant part:  "An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out−or attempted to be set out−in the original pleading."  Rule 15 "governs amendments to habeas petitions in a § 2255 proceeding."  *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005).

16

arise from the same core facts, and not depend upon events which are separate both in time and type from the events upon which the original claims depended") (internal quotations omitted). Petitioner notes that his original motion raised ineffective assistance claims, but the original claims involved distinct issues and did not concern his prior convictions or objections to his criminal history score. The alleged double counting guideline error claim, therefore, does not relate back to the original filing. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) ("a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance").

"[T]he AEDPA statute of limitations defense is not jurisdictional" and "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (internal quotations omitted). "To obtain tolling . . . a petitioner bears a substantial burden to establish . . . that he exercised reasonable diligence in trying to preserve his rights but was prevented from timely filing by extraordinary circumstances." *Dominguez v. Duval*, 527 F. App'x 38, 40 (1st Cir. 2013); *see also Trapp v. Spencer*, 479 F.3d 53, 61 (1st Cir. 2007) (discussing illustrative cases). "The diligence prong covers those affairs within the petitioner's control, while the extraordinary-circumstances prong covers matters outside his control." *Blue v. Medeiros*, 913 F.3d 1, 8 (1st Cir. 2019). Petitioner provided no allegations or arguments to establish the requisite diligence and extraordinary circumstances for equitable tolling.

17

A sufficient showing of "actual innocence" can also provide "a gateway through which a petitioner may pass" to reach the merits of a postconviction challenge despite a procedural default or the expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To establish a gateway innocence claim, a petitioner must show that it is more likely than not that, "in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006) (discussing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). In this case, Petitioner has not presented any new evidence on the question of his guilt that was not presented or available before conviction. Any gateway innocence claim, therefore, fails.

For those reasons, the guideline error claim is untimely and dismissal is warranted.[5] A somewhat different analysis applies to the vacated conviction claim, however.

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence

---

[5] To the extent that there is any doubt about the timeliness of the claim, dismissal would also be appropriate because the claim lacks merit. Petitioner argues that the conviction should not have been counted in his criminal history score because the sentence for the crime was imposed to run concurrently with another conviction for which Petitioner received points toward his criminal history score. Petitioner is mistaken, however, because the relevant guideline specifies that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.)" *See* U.S.S.G. § 4A1.2(a)(2). The PSR and the Government's exhibits from the state court proceedings reflect that although Petitioner was sentenced at the same time for the two offenses, he committed the offenses several months apart and committed the second offense several months after being arrested for the first offense. To the extent that Petitioner seeks to construe the intervening arrest language as requiring an arrest after being sentenced for the first crime, the argument does not consider the parenthetical in the guideline and Petitioner does not offer a persuasive explanation or authority to support the argument.

18

"is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). The fourth prong of § 2255(a) is a narrow category that applies only in "exceptional circumstances" and "encompasses assignments of error that reveal fundamental defects which, if uncorrected, will result in a complete miscarriage of justice, or irregularities that are inconsistent with the rudimentary demands of fair procedure." *Cuevas v. United States*, 778 F.3d 267, 271–72 (1st Cir. 2015) (quotation marks and modification omitted). The First Circuit has recognized that one qualifying scenario involves cases where there is a postjudgment vacatur of a state conviction which affected the federal statutory or guideline sentencing range. *Id.* at 273. The Supreme Court teaches that the vacatur is a new fact that would prompt a new one-year statute of limitations provided the petitioner sought the vacatur of the predicate conviction with due diligence in state court after entry of judgment in the federal case. *Johnson v. United States*, 544 U.S. 295, 298 (2005).

Although Petitioner did not address the issue of his diligence following the entry of judgment in his federal criminal case even after a procedural order highlighted the issue, and although the delay appears to be lengthy, the Government expressly waived the statute of limitations defense. (Supplemental Response at 10, 2:19-cr-00122-JAW-2, ECF No. 314, 2:21-cr-00163-JAW, ECF No. 165 ("the Government does not challenge whether this new claim is timely filed or procedurally defaulted")). Because the Government waived the timeliness issue, the Court need not (and likely is not permitted to) rely on Petitioner's failure to establish diligence in seeking to overturn the prior state court conviction after sentencing in federal court. *See Nunez-Perez v. Escobar-Pabon*, 133 F.4th 33, 42 (1st Cir.

19

2025) (noting that "a district court has no discretion to take up a timeliness defense sua sponte when the government is aware of the limitations defense and intelligently chooses not to rely on it or when the defense is strategically withheld") (quotation marks and modifications omitted).

The Government argues instead that Petitioner is not entitled to resentencing because the Court made comments suggesting that its sentence was somewhat divorced from the guideline range and because the sentence was lower than the low end of the guideline range that would have applied without the two criminal history points from the prior conviction. Courts have found resentencing to be unnecessary after the vacatur of a prior conviction when the guideline range would have been the same even with the lower criminal history score, such as when the lower criminal history score does not change the criminal history category. *See United States v. Henry*, No. CR 14-10319-DJC, 2020 WL 58418, at *6 (D. Mass. Jan. 6, 2020). Although a postconviction court is required in some contexts (such as when analyzing the prejudice prong of an ineffective assistance claim) to consider what a court was likely to have done in alternative scenarios, the First Circuit instructs against that type of reasoning in the context of a vacated conviction that was used to enhance the guideline range of a federal sentence.

In *Cuevas*, the First Circuit held that postconviction relief is available not only when a vacated prior conviction altered the statutory range but also in "cases involving vacaturs of state convictions which affect federal Guidelines sentences." 778 F.3d at 273. When the Government argued in that case that resentencing was not necessary because the district court had the authority to and might impose the same sentence under the reduced

20

guideline range, the First Circuit "reject[ed] th[e] argument," and discouraged "[s]peculation" or "conjecture" without a new sentencing proceeding that the district court would impose the same sentence it had when it originally considered "the equivalent of a nonexistent offense." *Id.* at 275 (quoting *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir.2011)).

For those reasons, the Court should resentence Petitioner with the benefit of guideline calculations that are not impacted by a "nonexistence offense."

## G.    Motion to Update the Presentence Report

Petitioner asked the Court to update the PSR to remove references to the prior conviction later vacated in state court. I previously noted that a sentencing court ordinarily has no authority to do as Petitioner requested. *See United States v. Sawyer*, No. CR 15-897-TUC-CKJ, 2025 WL 2645695, at *1 (D. Ariz. Sept. 15, 2025). Through several filings, Petitioner clarified that he wished instead for the Court to consider the argument in connection with his § 2255 motion because he maintained that it entitled him to a new sentencing proceeding. For the reasons explain above, I conclude that Petitioner is entitled to a resentencing proceeding. The motion to update the PSR is now moot because Petitioner has arguably withdrawn the motion, and even if he has not withdrawn the motion, he will obtain through that proceeding the same relief he seeks in the PSR motion. Accordingly, dismissal of the motion is appropriate.

### CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. I recommend that the Court grant

Petitioner's motion for habeas relief under 28 U.S.C. § 2255 as to the claim for resentencing following a vacated prior conviction and otherwise deny Petitioner's motion for postconviction relief. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of any other denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2). I also recommend the Court dismiss the motion to update the PSR.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of August, 2026.